STATE *v.* RICHARD BEAN.

May Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed October 8, 1935.

*Shields & Conant* for the respondent.

*Stanley L. Chamberlin,* State's attorney, for the State.

THOMPSON, J. ■ The respondent was convicted by a jury of a breach of the peace by assaulting and striking one Chester Pierce. At the close of the State's evidence, and again, at the close of all the evidence, the respondent moved for a directed verdict on the ground that the evidence was not sufficient to warrant the submission of the case to the jury. Each motion was denied and the respondent was allowed an exception. The first motion was waived by the respondent proceeding with the trial, so we consider only the motion made at the close of all the evidence.

The alleged offense was committed between one and two o'clock Sunday afternoon, August 27, 1933, outside a small building, hereafter referred to as the golf office, on the golf course of the Lake Morey Inn in Fairlee. At that time the respondent was in charge of the golf office. Chester Pierce, his brother, Charles Pierce, who was a caddie on the golf course, and two other caddies, lived in Orford, New Hampshire. Chester Pierce had driven in his car with Delbert Mack from Orford to get his brother and the two other caddies to take them home to dinner. He parked his car in front of the golf course and waited there in his car. Charles Pierce and a caddie by the name of George Orton got into the car where they waited for another

caddie, Frank Perry, who had to carry some golf clubs to a car that was some distance away. It appeared that Charles Pierce and the respondent, who was also a caddie, had had some trouble on the golf course earlier in the day.

The evidence is conflicting, but viewing it in the light most favorable to the State, the jury would have been justified in finding the following facts: Before Frank Perry arrived at the car, Charles Pierce got out of it and went to the office building to get a drink of water, but he did not get any water because the water bottle was broken. He and the respondent then had an argument that resulted in a physical encounter on the walk that went around the office in the office building. Charles called the respondent a name and the latter struck at him but did not hit him. Charles then tackled the respondent around the legs, which threw the latter across a railing, and he was holding him there. Chester Pierce and the boys with him saw the respondent strike at Charles and they left the car and went over to the office building. Chester Pierce separated the respondent and Charles and told the latter to get up and go home. The respondent then struck at Chester but he did not hit him. He did hit Delbert Mack a blow in the neck.

After Chester separated the respondent and Charles, they all went out onto the grass, ten or fifteen feet from the office building. As they were leaving the building the respondent was trying to get hold of Charles and Chester was trying to separate them. As they left the building and got on the grass the respondent struck Chester a hard blow under the jaw that knocked him down and rendered him unconscious for a few minutes. The blow was hard enough to cause a longitudinal cut about an inch to an inch and a half long and a transverse cut about an inch long in his tongue. The inside of his tongue was turned almost inside out. He was taken to a hospital later in the day where four or five stitches were taken in his tongue. While Chester was unconscious, Charles and the respondent resumed their fighting. Charles got the respondent on the ground face down and was holding him there. When Chester became conscious he separated them, and he and the boys with him got into his car and went home. The respondent did not at any time tell Chester Pierce and the other boys to leave the office building, but, as they were leaving to go home, he called them names and told them to get off the premises. Chester Pierce

did not at any time threaten the respondent or strike him. His endeavors were directed to separating him and Charles and to get the latter to go home. The whole affray lasted about five minutes.

■ The respondent argues that he did no more in defending himself and protecting the property in his charge than he had a legal right to do, and that he committed no crime. There is no evidence that Chester Pierce and the other boys attempted to injure or destroy any of the golf course property. The jury would have been justified in finding that what he did was not in defense of himself and the property in his charge but to settle a personal animosity against Charles Pierce by personal combat; that if he had remained in the office building after the other boys left there would have been no more trouble; that the blow he struck Chester was not in defense of himself and property and was wholly unwarranted. On the evidence in the case, the guilt of the respondent was a question of fact for the jury. This exception is not sustained.

■ The respondent was allowed an exception to the statement made by the State's attorney in his argument before the jury, that Chester Pierce "* * * had a right to use whatever force was necessary." The ground of the exception was that "this Chester had no right there to use any force." In the absence of anything in the record that shows the occasion to which the State's attorney referred, we cannot say his statement constituted prejudicial error.

The respondent was allowed an exception to the statement made by the State's attorney in his argument: "To adopt the theory of the respondent you have got to lay aside all the testimony of the State."

■ The theory of the respondent was that after Chester Pierce first separated him and Charles Pierce, he ordered all the boys to leave the office building, but they did not leave it at that time. Chester Pierce and the boys with him testified that the respondent did not at any time order them to leave the office building, and he did not order them to leave the golf course until after the fighting was over and they were going to the car to go home. It fairly appears from the record that the statement "all the testimony of the State" referred to the above testimony of the boys, which was all the testimony of the State

on that subject, and that the jury so understood it. The argument was legitimate and the exception is not sustained.

 The respondent excepted to the charge of the court to the jury wherein it said, in substance, that the amount of force that a person can use in self-defense is such ''force as he reasonably believes and has good ground to believe is necessary to protect himself.'' The ground of the exception is that the instruction was erroneous because it cast upon the respondent the burden of convincing the jury that he had good reason to believe that the force he used was reasonable. The exception is not sustained. The court told the jury in a supplemental charge that the respondent had no burden in the case; that the entire burden of proof was on the State.

 The respondent excepted to the charge of the court with reference to an assault and battery by one in defense of property delivered to him to be kept, wherein the court said that the person in charge of such property would not be justified in assaulting a trespasser in the first instance, but must first require the trespasser to depart, and then use only such force as is reasonably necessary to expel him, but if the trespasser first used violence, then the person in charge, without a request to depart, may use violence in return. The substance of the ground of the exception is that notice to a trespasser is not necessary before the person in charge may proceed to expel the trespasser by force. We find no error in that portion of the charge as given. 5 C. J. 745, § 233, and cases cited.

The court, after instructing the jury as to the amount of force an assaulted person may use in self-defense, said: ''Bear in mind that this is not a prosecution against Chester Pierce, or a prosecution against Charles Pierce, and neither of them are on trial. Neither is the respondent here charged with assaulting Charles Pierce, but the offense charged is a breach of the peace by assaulting, among other things, Chester Pierce. This is not a lawsuit between the respondent, on the one hand, and one or both of the Pierce boys on the other. However much you may think one or both of the Pierce boys are at fault, that is no excuse for a breach of the peace by the respondent.'' The respondent excepted to the statement ''However much you may think one or both of the Pierce boys are at fault, that is no excuse for a breach of the peace by the respondent,'' on the ground that it was equivalent to instructing the jury that even

if Chester Pierce assaulted the respondent, it would make no difference with the respondent's guilt under the complaint.

This part of the charge is not susceptible to the construction given to it by the respondent.

The court instructed the jury fully as to the amount of force the respondent might use if it found that he acted in self-defense. The court instructed the jury in this part of the charge under consideration as follows: "The conduct of Chester Pierce is important only on the consideration of self-defense and justification, because if you decide that the respondent was justified in what he did, or did what he did in self-defense, he is not guilty of a breach of the peace." The court also instructed the jury that unless they were convinced beyond a reasonable doubt that the respondent did not act in self-defense, or, if acting in self-defense, he used no more force than he reasonably had good ground to believe was necessary to protect himself, their verdict should be "Not Guilty."

Taking the charge as a whole, we find no error in the instructions given to the jury by the court.

*We find no error in the proceedings in the court below, and the exceptions are overruled. Let execution of sentence be done.*