## State of Vermont
### v.
## Calvin Sherman Bogie

[217 A.2d 51]

December Term, 1965

Present: **Holden, C. J., Shangraw, Barney and Keyser, JJ.**

Opinion Filed February 1, 1966

*Sten Lium,* State's Attorney, for the State.

*C. O. Granai* for the respondent.

**Holden, C. J.** The respondent was convicted of assault. His trial was by jury in the Caledonia Municipal Court. This appeal from the judgment assigns error at the trial in the exclusion of evidence offered by the defense, the instructions of the court and the failure of the trial court to grant the respondent's motion to set aside the verdict and order a new trial.

According to the evidence presented by the State, the alleged offense occured on the respondent's dairy farm in the Town of Barnet on August 7, 1963 when the respondent forcibly ejected James Emery from the farm. Emery was then employed by the State of Vermont as a dairy inspector in the Department of Agriculture. Emery visited the respondent's farm in the company of Cedric Houghton, the plant manager of the Cabot Creamery, where the respondent marketed his milk.

Emery had inspected the respondent's dairy in the preceding February. He testified the respondent had constructed a very good milk house, but the location of the bulk tank did not meet the sanitary conditions specified by the rules and regulations of the Department. Emery authorized temporary use of the bulk tank on the respondent's assurance that necessary corrections, in compliance with the regulations, would be made by July 1st. On the return inspection in August, Emery testified he found the necessary changes had not been made. He informed Bogie that he could not approve the installation as it was, but would give him more time if he was assured the corrections would be accomplished. Otherwise, ". . . if he didn't intend to make these corrections I would have to exclude the dairy." To this the respondent made no reply but hit Emery on the chin, grabbed him by the throat and thrust him against the wall. Then, in strong and abusive language, he ordered Emery and Houghton to leave the premises. This evidence was fully corroborated by Houghton.

The defense sought to justify the attack on the claim that the dairy inspector was a trespasser and that the respondent acted in rightful protection of his own property interests. The respondent also contended the incident was provoked by the threatening and arrogant conduct on the part of the complaining witness, Emery.

The respondent testified that Emery protruded his fingers into the respondent's face and threatened to exclude his milk production. The respondent ordered Emery to leave. According to the respondent's version of the incident, Emery crushed a cigarette on the surface of the bulk tank. When he refused to leave the respondent "very cautiously with my right hand grabbed Mr. Emery by the front of his shirt, I put him up against the wall and I said 'Jim, I mean business.' " With this Emery and Houghton left the premises. The respondent denied striking Emery and using any unnecessary force in getting Emery off his property.

To support the claim of provocation the defense introduced testimony of Eugene Davis concerning a conversation, which the witness overheard in a drugstore in Lyndonville, between Emery, the Lyndonville police chief and another person. The conversation took place after the alleged assault and three or four months before the trial. The witness testified he heard Emery say to one of the persons in the drugstore ". . . if you don't do as I say you will end up like Bogie." After this answer was given the State moved to have this testimony stricken as irrelevant. The motion was granted.

The relevancy of circumstantial evidentiary facts is as varied

and "as changeful as the events out of which they grow." *State* v. *Ryder*, 80 Vt. 422, 426, 68 Atl. 652. To render the evidence competent on the issue for which it is offered it must afford a basis for some rational inference of the ultimate fact sought to be proved. *Tyrrell* v. *Prudential Insurance Co.*, 109 Vt. 6, 16, 192 Atl. 184.

The person named Bogie, referred to in the statement, was not identified as the respondent. But if we assume he was the same person, Emery's mental attitude toward the respondent several months after the alleged assault had nothing to do with his mental condition and conduct at the time of the disturbance at the respondent's farm some months before. There was no error in striking this evidence.

In submitting the case the court instructed the jury in the first instance: "There is no question, ladies and gentlemen, in this case of any self defense. I believe the evidence clearly states that Mr. Bogie was not defending himself from any attack made by Mr. Emery, so that you do not have to worry about that aspect of breach of the peace."

The respondent excepted to this instruction as erroneous. His counsel stated: "There is always a question of self defense when one is on another's property and the owner requests the outsider to vacate." Later the respondent's attorney went on to say: ". . . Our Vermont laws state definitely that I am a defender of my property, and if I ask you to leave and you don't leave, I have a right to eject you with such reasonable force as a prudent man would use. This man had the right to use such reasonable force as a reasonable man would use. It is up to the jury to decide whether reasonable force was used."

Following an unrecorded conference in chambers the trial judge returned to the court room and delivered a supplementary charge in this language: "I simply want to add a few words to what I have already said, ladies and gentlemen, and I have written them down because it is an agreed statement to you at this time. Perhaps the Court may have given the wrong impression as to what provocation would be justifiable by its former language as read to you.

"First of all, mere words do not justify an assault and battery, therefore the questions which you must answer are:

1. Was Mr. Emery on the premises legally?
2. Did Mr. Bogie ask Mr. Emery to leave his premises and give him sufficient time to do so?
3. If he did, did he use any more force than was reasonably necessary to eject Mr. Emery from the premises?

"These are the questions which you must answer in order to find beyond a reasonable doubt that Mr. Bogie was guilty of a breach of the peace.

"State's Attorney: May we approach the bench?

"Judge: I'll simply make another very brief statement that even though a person is on one's premises illegally that you still have a duty to warn them and give them a chance to leave before you use physical violence to eject them.

"You may take the jurors to the jury room, Mr. Sheriff."

No objection was made to the final instructions given the jury. Nor was there any protest from the respondent to the court's indication of agreement by counsel to the supplemental charge.

■ The additional instructions addressed to the jury on defense of property complied in substance with the request suggested by the respondent's earlier objection. It correctly explained the law consistent with the instructions affirmed in *State* v. *Bean,* 107 Vt. 513, 518, 180 Atl. 882.

■ The court's charge, that provocation by mere words will not justify a physical attack, was correct. *Willey* v. *Carpenter,* 64 Vt. 212, 215, 23 Atl. 630; 6 Am. Jur. 2d Assault and Battery, §61, p. 56. If the evidence supports a finding that the dairy inspector's conduct went beyond his speech and demeanor, such a shortage was not called to the court's attention to cure the deficiency before the jury withdrew.

The absence of any objection indicates the respondent was content with the instruction as finally given. On this state of the record, the jury's verdict will not be upset by a claim of error presented for the first time on appeal. *State* v. *Stone,* 124 Vt. 215, 217, 201 A.2d 703; *Rule* v. *Johnson,* 104 Vt. 486, 489, 162 Atl. 383; *Bonazzi* v. *Fortney,* 94 Vt. 263, 271, 110 Atl. 442.

Several days after the trial was finished, a written motion was filed in behalf of the respondent by his counsel. It called upon the court to set the verdict of guilty aside and order a new trial. The motion specifies five different reasons. Only two of the grounds first stated are retained and argued on appeal.

The points reserved in this Court are that one of the jurors became separated from the other members of the jury and was allowed to be unattended during the time when the jury had the case under consideration. The other ground of the motion alleges that one of the jurors was beckoned into the state's attorney's office in the court-

house after the verdict had been returned and the jury discharged. The person who summoned the juror, the purpose of the call, and what, if anything, transpired thereafter, is not contained in the motion.

These allegations do not establish misconduct on the part of any member of the jury. Since the trial was a prosecution for a misdemeanor, we are not prepared to say that the mere separation of one of the jurors from his fellow jurymen requires a mistrial as a matter of law. See *State* v. *Anderson,* 119 Vt. 355, 359, 125 A.2d 827; *State* v. *Lawrence,* 70 Vt. 524, 529, 41 Atl. 1027. The motion presented to the court below failed to present the question.

A motion claiming misconduct by jurors, or those who attend them, is addressed to the trial court's discretion. The inquiry requires a determination of issues of fact. The question is whether the ends of justice and the purity of jury trials require a new trial be granted on the facts determined by the court that hears the petition. The party seeking corrective action has the burden of establishing the essential facts by adequate and competent proof, either by way of oral testimony or supporting affidavit. *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 163, 130 Atl. 758. To the same effect is *Bellows Falls* v. *State Highway Board,* 123 Vt. 408, 410, 190 A.2d 695.

The facts claimed by the respondent in the present motion are not established in the record of the trial, nor are they verified by oral testimony or written affidavit. This deficiency justified the trial court in dismissing the motion. Beyond that, the motion failed to comply with the requirements of Municipal Court Rule 14: "The court will not hear any motion — if grounded on facts unless such facts are verified by affidavit or are apparent upon the face of the record and the papers on file in the case, or are agreed to and stated in writing and signed by the parties or their attorneys." 12 V.S.A. App. IV R. 14.

*Judgment Affirmed.*