Francois BOYD, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CM–1803.

District of Columbia Court of Appeals.

Submitted May 3, 1999.

Decided July 15, 1999.

Howard F. Bramson, appointed by the court, was on the brief for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher, and Mark J. Lesko, Assistant United States Attorneys, were on the brief for appellee.

Before SCHWELB, Associate Judge, and KERN and MACK, Senior Judges.

MACK, Senior Judge:

Appellant Francois Boyd was convicted of simple assault in violation of D.C.Code § 22–504 (1996 Repl.). Boyd appeals, claiming the victim's conduct constituted a defense to the charge. We disagree and affirm.

On August 27, 1997, Lonnie Snodgrass visited Boyd, a fellow construction worker, in the alley behind Boyd's home. Boyd and Snodgrass had been friends for ten to twelve years. Snodgrass testified that he would frequently visit Boyd in the alley behind his home and that often he and Boyd would "fuss[ ]" with each other.

On that day, Snodgrass and Boyd were drinking. Boyd testified that Snodgrass was loud and cursing.[1] Boyd's fiance, Angela King, came out of the house, and asked Snodgrass to leave. Snodgrass responded by asking Boyd, "[C]an't you come out and play. Won't your woman let you go out with the fellahs [sic]." Snodgrass insulted Boyd's six-year old son by saying he acted like a little girl, and told Boyd that he should "put a muzzle" on King.[2] Snodgrass also testified that he called Boyd a "bitch" and a "nigger."[3]

Boyd testified that Snodgrass moved to his car, and pointed his finger toward Boyd. Boyd then slammed the car door into Snodgrass three times, hitting Snodgrass in the head. Sitting without a jury, the trial court found Boyd guilty of assault.

1. In rendering its verdict, the trial court stated, "Mr. Snodgrass, I'm sure, was completely obnoxious that day."

2. Boyd testified that Snodgrass called his son a "sissy," and King a "gorilla." Snodgrass denied this.

3. This court recognizes that, in light of American history, the word "nigger" (especially when used by a person carrying the census

classification of "white") can be very demeaning and insulting. The record in this case does not reveal the race of Snodgrass. However, Snodgrass testified that Boyd and others at their work had called Snodgrass a "bitch" and "nigger" in the past as well. When Snodgrass admitted that he called Boyd a "nigger," Snodgrass stated, "[Y]eah, I called him a nigger. Yeah, I'll admit that. But there's a way to call him and a way not to. Like I said, we've been friends for 12 years."

■ On appeal, Boyd argues that Snodgrass' use of these words rose to such a level that the assault was justified. Boyd's argument is unavailing for two reasons. First, at trial Boyd argued self-defense. Boyd contended that when Snodgrass pointed his finger at him, he believed Snodgrass had a knife. Having argued one theory before the trial court, Boyd is bound by that theory and cannot now assert a different defense. *See Byrd v. United States,* 502 A.2d 451, 453 (D.C. 1985).

Second, as Boyd concedes in his own brief, the general view of other jurisdictions is "that in the absence of statute, mere words, no matter how abusive, insulting, vexatious, or threatening ... will not justify an assault." *Eagleston v. United States,* 172 F.2d 194, 199 (9th Cir.), *cert. denied,* 336 U.S. 952, 69 S.Ct. 882, 93 L.Ed. 1107 (1949). *See also* 6 AM. JUR. 2D *Assault and Battery* § 61 (1963); 6A C.J.S. *Assault and Battery* § 18 (1975) ("Generally, provocative words or acts unaccompanied by acts of hostility do not justify an assault although they may go in mitigation of damages.").

■ This is consistent with our case law. In the civil context, we recognized that "[a]t common law, in the absence of a special statute, no provocative acts or words—unless accompanied by an overt act of hostility—would justify an assault, no matter how offensive or exasperating the acts or words were." *Williams v. District Unemployment Compensation Bd.,* 383 A.2d 345, 350 (D.C.1978) (citations omitted). Similarly, words cannot form sufficient provocation to negate the element of malice in a homicide case. *See West v. United States,* 499 A.2d 860, 865 (D.C.1985); *Nicholson v. United States,* 368 A.2d 561, 565 (D.C.1977). In accordance with other jurisdictions, we hold that mere words,[4] *unaccompanied by overt acts of hostility,* cannot act as a defense to the criminal charge of assault. *See, e.g., State v. Blank,* 352 N.W.2d 91, 92 (Minn. Ct.App.1984); *State v. Tibbetts,* 379 A.2d 735, 737 (Me.1977); *People v. Martinez,* 3 Cal.App.3d 886, 889, 83 Cal.Rptr. 914 (1970); *State v. Bogie,* 125 Vt. 414, 217 A.2d 51, 55 (1966); *State v. Jones,* 179 Or. 636, 173 P.2d 960, 961 (1946).

Accordingly, Boyd's conviction is

*Affirmed.*

---

4. "Sticks and stones may break my bones, but words will never hurt me." Anon.