Newman v. Hobbs, No. 1164-01 Cncv (Katz, J., Jan. 2, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                             SUPERIOR COURT
Chittenden County, ss.:                      Docket No. 1164-01 CnCv


NEWMAN

v.

HOBBS


ENTRY


Plaintiff files two post-verdict motions seeking to obtain a new trial or an enhanced award of damages. First, plaintiff asks that the court conduct an interview of two jurors, to see if there is a basis for attacking their verdict. Second, plaintiff asks for a new trial, or in the alternative an additur. We deny both motions.

This is a personal injury action, in which plaintiff presented

evidence of a permanent shoulder injury resulting from an automobile accident. Fault in the accident was never at issue. The extent of injury and permanence were the issues at trial. Plaintiff suffers the results of some early developmental problems. He works part time for a local supermarket, as a bagger. At trial, plaintiff made an excellent appearance, giving a charming and candid explanation of the effects of his injury. The jury's award of $15,000 was very disappointing to plaintiff. He seeks a new trial, or additur. In addition, plaintiff seeks to have the court conduct an inquiry of two jurors regarding the possible receipt of information from an excused juror, which may have affected the deliberations and verdict.

At the start of trial, one juror, George Henry, indicated to the bailiff that he wished to speak with the judge. In chambers, Mr. Henry indicated that he had seen the plaintiff at a college hockey game, and during the excitement of the game, had noticed plaintiff freely waiving his arms about. This movement was certainly pertinent in an action claiming shoulder injury. The court then excused Mr. Henry, all outside the presence of the remaining jurors, admonishing him to leave without telling the other jurors the reason for his premature departure. Mr. Henry, who mentioned that his father-in-law is a judge and that the latter had told him to report what he had witnessed and to expect this response, indicated that he understood what the court was doing, and would comply. Plaintiff now reports that Mr. Henry returned to the jury room, presumably to retrieve his coat, and said "I'm out of here." When another juror asked why, Henry responded "I saw something I should not have seen." This information about what transpired in the jury room, when Henry was leaving, is reported to the court by plaintiff's counsel, based on what he was told by another juror. We assume it to be true. The court then brought the jury out to start the trial, and explained the sudden departure

of their colleague by saying he was excused for having accidentally seen something over the weekend, relating to a party.

Plaintiff seeks to have two jurors questioned by the court about these facts—the jury foreman and juror Lloyd Bachand. He presumably selects the foreman ex officio, not because she has any particular knowledge. Mr. Bachand is apparently selected on the basis of two facts. First, during plaintiff's cross-examination of the defense examining physician, Bachand requested a break, presumably to use the bathroom. Plaintiff suggests this request was improper, harmful because it cut up the cross-examination and permitted the witness to reorganize his thoughts or testimony. Second, Bachand apparently stated during deliberations that he did not want to drive by and see that plaintiff had a "BMW in his driveway," presumably the result of a generous verdict. The juror who related this statement to plaintiff's counsel clearly implied that she, and presumably others, wanted to award plaintiff a greater sum, but compromised with Bachand to reach a verdict. That other juror came to feel bad about the outcome.

Plaintiff supports the idea of a court-directed inquiry into these issues by citing Peterson v. Chichester, 157 Vt. 548 (1991). In that case, the trial judge did conduct an inquiry of the jury foreperson to learn why she had expressed some doubt to the clerk of the court upon delivering the verdict. A careful reading of Peterson, however, reveals that the Supreme Court did anything but sanction the trial court's actions there. Peterson, 157 Vt. at 552. Pursuant to Evidence Rule 606(b),

Upon an inquiry into the validity of a verdict ... a juror may not testify as to any matter or statement occurring during the

course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict ... or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received....

V.R.E. 606(b).  It is difficult to imagine what the trial court in Peterson could have asked the unfortunate foreperson, which would not have contravened the quoted Rule.  The Supreme Court rejects appellant's arguments that the inquiry was wrong, *but* only because appellant had requested and obtained the inquiry in the first instance.  Peterson, 157 Vt. at 552.  The correct reading of Peterson must be that both appellant and the Supreme Court recognized that the inquiry of the foreperson was improper—"Plaintiff's maneuvering with the foreperson points out the wisdom behind V.R.E. 606(b), which forbids a juror to testify about the deliberation process...."  Id.

This discussion of 606(b) omitted an exception to the Rule's proscription—"the question of whether extraneous prejudicial information was improperly brought to the jury's attention...."  Plaintiff attempts to couch his argument in this exception, but we conclude that such efforts misconstrue the Rule and its proper application to the situation now before the court.  As previously indicated, we accept as true plaintiff's assertion that excused juror Henry explained that he was "out of here" because he had seen something over the weekend.  To this we add the court's explanation that Henry's action somehow related to one party.  Plaintiff suggests that the two must be seen by the jury as being necessarily related

to plaintiff, as fault was not at issue in the case. But this restrictive inference is unwarranted. Henry might well have seen the defendant drunk, or abusive, or driving carelessly, or displaying wealth from which a large verdict might easily be satisfied. Plaintiff's after-the-fact inference simply reads too much into the two statements which jurors heard, the one by their excused colleague, the other by the court. Standing alone, both were bereft of any significant factual content. Adding the two together does not support a jury inference that "our colleague must have seen the plaintiff acting inconsistently with his claimed disability." There is neither evidence that this speculative addition actually occurred nor reason suggestive of its likelihood. See State v. Hudson, 163 Vt. 316, 324–25 (1995) (rejecting an inference of extraneous influence as insufficient). Were the court to engage in the sort of inquiry plaintiff seeks, it could presumably ask if the foreman or Bachand heard any juror put the two comments together in the way plaintiff suggests. That connection of the two could have occurred prior to the start of deliberations, and thereby not run afoul of 606(b). But this jury was repeatedly admonished not to discuss the case or its evidence during the day of trial, and we will not assume that the instruction was disobeyed. To inquire as to whether the two "Henry statements" were discussed during deliberations, or whether they influenced the thinking of either the foreman or Bachand would clearly violate 606(b).

We do not dismiss, out of hand, the possibility that the Henry statements were perceived by one or more jurors in the way plaintiff suggests. It could have happened. But we conclude the record does not support a probability or even a significant chance that it did. State v. Bogie, 125 Vt. 414, 418 (1966) (party seeking corrective action has the burden to establish sufficient facts). This benign record is of a wholly

different character than that of the "inflammatory newspaper editorial" introduced into the jury room which was held to justify a new trial in Bellows Falls Village Corp. v. State, 123 Vt. 408 (1968). For that reason, we decline to order a new trial on the basis of the present record. We decline to attempt to amplify this record by juror inquiry for the reasons stated above.

The question of Juror Bachand's two statements similarly lead to the conclusion that they provide no basis for discarding the verdict. Asking for a bathroom break is certainly not misconduct by a juror. If anything, it permits quite the opposite conclusion, suggesting as it does that the juror was experiencing interference with his concentration on the ongoing examination. We think it promotes both consideration for the rights of jurors and improved functioning in terms of concentration to sanction their requesting a bathroom break in the midst of evidence. Certainly one such request is not the basis for negative inferences sufficient to discard a verdict. See Bogie, 125 Vt. at 418 (noting that the mere separation of a juror from jury was not enough to constitute juror misconduct). Finally, Mr. Bachand's asserted disquiet over the possibility of his verdict buying the plaintiff a new BMW constitutes precisely the kind of "statement during deliberations" or "mental process" toward which Rule 606(b) provides impermeable prophylaxis. Its ultimate purpose is to encourage candid discussion in the jury room, and we may not erode the law's promise to all jurors. Tanner v. United States, 483 U.S. 107, 117–25 (1987).

We consider the question of whether a new trial, perhaps conditioned on acceptance of an additur, to be a close one. There is no doubt that verdict was parsimonious at best. Plaintiff's candid good attitude about what he can still do should not obscure the fact that he is

apparently suffering a long-standing loss of function and resulting discomfort.  Nevertheless, we cannot conclude that the verdict is so far below what was rationally commanded by the evidence as to be unacceptable.  It is, rather, one in a long line of low verdicts that seem to reflect either a change in the way society views proper compensation for soft-tissue injuries from everyday auto accidents or the unfortunate effect of Vermont's continued adherence to the minority requirement of unanimity in order to secure a verdict in civil cases.  See Shaw v. Barnes, 166 Vt. 610, 611 (1997).

Considering the asserted "juror misconduct" issues and the low award together, we are still not persuaded to vacate the verdict.  See Peterson, 157 Vt. at 551 (discussing trial court's discretionary power to grant new trials).  There is no such thing as the perfect trial.  The interaction of diverse parties, lawyers, judges and twelve jurors almost always results in something out of the ordinary.  Slight deviations from the pattern are not a proper basis for discarding the product.  Moreover, the plaintiff's issues do not overcome the evidence, taken in a "light most favorable to the jury's verdict," which supports the award.  Shaw, 166 Vt. at 611.  Despite plaintiff's disappointment, the award covers all of plaintiff's stated medical expenses with some additional for his pain and suffering, which defendant contested.  With such factual support, we are loathe to disturb the verdict. Id.

The motion for a new trial is denied.

Dated at Burlington, Vermont, _____, 200__.

_____
Judge