NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 59

No. 2015-407

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| David G. Buckley | February Term, 2016 |

David A. Howard, J.

Alexander Burke, Bennington County Deputy State's Attorney, Bennington, for
 Plaintiff-Appellee.

Timothy M. Andrews and David F. Silver of Barr, Sternberg, Moss, Lawrence, Silver &
 Munson, P.C., Bennington, for Defendant-Appellant.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.    **EATON, J.**  Defendant appeals from his conviction by jury of aggravated assault with a deadly weapon and disorderly conduct. Defendant was acquitted of reckless endangerment. Defendant was charged with these crimes after allegedly pointing a shotgun at and threatening to shoot two men who were repossessing a vehicle from a tenant parking lot on his property. Defendant admitted confronting the men with a gun, but steadfastly denied pointing it at them or threatening to shoot them. Defendant argues on appeal that the court committed plain error by failing to sua sponte instruct the jury on self-defense, defense-of-others, and defense-of-property. He maintains that the court compounded its error through its instruction on repossession of collateral. We find no plain error, and affirm.

¶ 2.     Defendant's claims of error require a detailed review of the evidence presented at trial.  The incident giving rise to these charges transpired on May 17, 2014, on defendant's property in Bennington, Vermont.  The property is located across the street from the police station, and it is bisected by two public roads.  Defendant lives on the property with his brother, Peter Buckley.[1]  Defendant owns a residential rental apartment building adjacent to his house.  There is a parking lot near the house that is used by the apartment building tenants.  Around 5:00 a.m. on the morning in question, two employees of a repossession company located a car that was the subject of their repossession efforts parked in the parking lot on defendant's property.[2]  The lot was no more than ten to fifteen feet off of the public road.  The car in question belonged to a woman who was visiting one of defendant's tenants.  Defendant knew of this woman, knew that she was a guest of his tenant, and knew that it was her car in the lot.

¶ 3.     After verifying that both the license plate and the VIN number matched the car they were seeking to repossess, the employees backed their flatbed truck toward the car and hooked it with a cable in preparation to tow it away.  One employee was in the driver's seat while the other hooked up the car.  The noise of the truck woke Peter, who went outside to investigate.  The employee who was outside testified that Peter was very loud, and that despite informing Peter why they were there, Peter told them to get off his property.  Peter, by contrast, described himself as calm, and claimed that the employee was belligerent and swearing at him.  Peter said that he "started to back himself into a log pile" as the employee was "coming at [him]."  Peter testified that he interacted only with this employee.

¶ 4.     Sometime during the encounter between the employees and Peter, defendant testified that he woke to loud voices outside his home using language he felt was abusive and

---

[1]  For convenience's sake, we refer to David Buckley as "defendant," Peter Buckley as "Peter," and the repossession employees as "employees."

[2]  A "repossession order" for the car was admitted into evidence without objection as a self-authenticated document under Vermont Rule of Evidence 902(11), and one of the employees identified the order at trial.

threatening. He looked out the window and claimed to see two men, unknown to him, advancing toward his brother. He heard his brother tell the men they needed to unhook the car and leave the property. Defendant grabbed his shotgun, which he claimed was unloaded, went outside, and stood next to Peter. Peter testified that at that point the employees were at least twenty to twenty-five-feet away. Defendant similarly testified that the employees were twenty feet away when he arrived on the scene, and he stated that immediately after seeing his gun, the employees "retreated back" to a position forty-five feet away. Defendant knew that the employees were not armed.

¶ 5. Not surprisingly, the testimony at trial differed considerably about what happened next. The employee who hooked up the car testified that defendant was fifteen feet away from him, and he held a shotgun in the "ready" position with the butt of the gun in his shoulder pocket. He testified that defendant pointed the gun in the "general direction" of himself and the other employee. The employees were standing on either side of the flatbed truck at that point. The employee also testified that defendant screamed at them multiple times that if they did not unhook the car he would shoot them. The shotgun remained pointed at them during a stand-off lasting between one and five minutes. Ultimately, the employee went to the tow truck and called the police. When the employee got off the phone, defendant and the shotgun were gone. The employee then unhooked the cable from the car, moved the tow truck into the parking lot and waited for the police to arrive.

¶ 6. Peter claimed to feel threatened because one employee was swearing and walked toward him. Nonetheless, he testified that he was calm when defendant exited the house, and defendant similarly testified that Peter was interacting with the employees in a "business-like" manner. Defendant stated that when he came outside with a gun, this stopped the employees from advancing toward him and Peter. As indicated, defendant testified that the men were twenty feet away when he emerged from the house, and that they moved back to forty-five feet away. Defendant and Peter denied that defendant ever pointed the shotgun at the employees and

3

stated instead that defendant had pointed it into the air for the duration of the encounter. They denied that defendant repeatedly threatened to shoot the repossession employees. According to defendant and Peter, they repeatedly told the men they were trespassing and eventually, the men were persuaded to leave.

¶ 7. Two of defendant's tenants also testified that defendant did not point the shotgun at the repossession men or threaten to shoot them. One tenant claimed to have been standing by defendant's side during the encounter with the employees, although police did not observe her at the scene, and defendant did not mention her presence to police.

¶ 8. The question of whether the employees were privileged to be on the property arose at trial. The employee who hooked up the car testified, based on his training and experience, to his understanding of what repossession agents were allowed to do. Peter also testified to his understanding of what was allowed.

¶ 9. At the close of the evidence, the court discussed its proposed jury instructions with counsel and asked the parties for any objections. The court explained in detail how it had crafted its instruction regarding a person's ability to repossess collateral, such as a vehicle. It discussed the case law it had reviewed on this issue, and it also discussed trespass and defense-of-property issues. The court expressed to the parties that a person has a reasonable right to deal with intrusions but also must use a reasonable degree of force, and noted that these were questions for the jury. While the State made numerous proposals in response to the court's proposed instructions, defendant raised no relevant objections.

¶ 10. The court instructed the jury in relevant part as follows:

> In determining intent, you may consider all of the surrounding circumstances and facts established by the evidence. A secured party may try to take possession of collateral such as a vehicle without judicial process if it can be done without breach of the peace. A breach of peace is an action that causes or is likely to cause an immediate disturbance or loss of public order. It must be reasonably likely and not merely a remote possibility.

Merely going on someone's land or trespassing to repossess a vehicle is not a breach of peace alone. Whether actions do rise to a breach of peace allowing the owner of the land to defend his ownership depends on the accompanying circumstances of each case. [There are] [a] number of factors . . . you may weigh. These include whether the manner [in which] it was done created a potential for immediate violence and the nature of the premises intruded upon. This can depend on the time of day, the closeness to a dwelling, whether the property is secluded or not, notice or lack of notice, whether the property is owned by the debtor or a third-party and whether the third-party had notice of the debtor's situation, [and] did anything have to be moved or broken such as gates or doors to enter the location.

Even if there is a breach of peace as you find it, defendant must still act reasonably and use only reasonable degree of force in defending against it. You must determine from all the circumstances as you find they happened, if any actions you find defendant did were reasonable under the circumstances, so that they were not criminal.

¶ 11. The jury convicted defendant of aggravated assault with a deadly weapon and disorderly conduct, and acquitted him of reckless endangerment. Defendant obtained new counsel and filed a motion for a new trial, raising arguments similar to those raised in this appeal. The court denied the motion. It explained that defendant had not raised any of his objections to the jury instructions at trial, and it found no plain error. The court found the instructions as given, and considering the lack of objections, were fair and appropriate.

¶ 12. Given the evidence, moreover, the court questioned if a self-defense instruction would have been proper but it concluded that the absence of such instruction certainly was not plain error. The court found it hard to believe that defendant had not knowingly refrained from a self-defense instruction considering the facts of the case and his argument as to innocence. It concluded that defendant should not now benefit by arguing that the court should have given such an instruction despite his failure to ask for it. While the court acknowledged that it must instruct on all necessary issues, it pointed to the disputed evidence as to how aggressive the men repossessing the vehicle were in contrast to defendant and his brother, and where they were located. It was undisputed, however, that the repossession employees were not armed and did

5

not assault anyone and that they retreated when confronted. This state of the evidence, the court concluded, did not rise to the level of requiring the court to give a self-defense instruction absent a request for one. The court further believed that its instructions on the rights of a property owner versus a repossessor were correct, and it declined to find a new trial warranted based on defendant's present argument as to what was a breach of peace and whether such occurred here by law. The court noted that it had explained to the parties its research on the issue and its conclusions as to the proper jury instructions. It found no reason to modify its analysis and research at trial that led to the instructions given. Defendant appealed.

¶ 13. On appeal, defendant reiterates his argument that the court committed plain error in instructing the jury. He maintains that his rights of self-defense, defense-of-another, and defense-of-property were clearly implicated by the evidence, and thus, the court's failure to sua sponte instruct the jury on these points was plain error. Defendant asserts that the court compounded its error by telling the jury that the repossession employees were privileged to enter his property. According to defendant, the employees were "trespassers" under the common law, and this status was not affected by the Uniform Commercial Code's (UCC) provision on repossession because the UCC merely codifies the common law. Defendant further asserts that the State failed to prove that the UCC was implicated in this case because the repossession order was admitted in error and, alternatively, the order did not provide sufficient proof that the repossession was governed by the UCC.

¶ 14. We begin with our standard of review. We have stated that the trial court has a duty "to charge fully and correctly upon each point indicated by the evidence, material to a decision of the case, whether requested or not." Kinney v. Cloutier, 125 Vt. 109, 112, 211 A.2d 246, 249 (1965). At the same time, however, "where it is claimed the court has failed to instruct on one or more essential points or issues, such failure must be brought to the court's attention before the jury retires so as to afford the court a fair opportunity to correct, add to, or modify the instructions given." Id. (stating that "[a] question cannot be brought to this court upon which it

6

is made to appear that the trial court had no fair opportunity to pass judgment" (quotation omitted)). Because defendant failed to object to the jury instructions at trial, he must establish plain error. See State v. Lambert, 2003 VT 28, ¶ 13, 175 Vt. 275, 830 A.2d 9 (rejecting argument that omitting element of offense in jury instruction was plain error per se and noting that "our recent decisions reflect a strong policy against finding categories of errors as plain per se" (quotation omitted)); see also State v. Wright, 154 Vt. 512, 520, 581 A.2d 720, 726 (1989) (concluding that even where court could have given instruction on diminished capacity and such instruction might have affected jury's deliberations, there was no plain error where defendant did not request instruction, did not object to its omission, did not argue it to jury, and trial did not revolve around defense theory of diminished capacity); State v. Cole, 150 Vt. 453, 457, 554 A.2d 253, 255-56 (1988) (holding that failure to give self-defense instruction was not plain error).

¶ 15.   To establish plain error in jury instructions:

> (1) there must be an error; (2) the error must be obvious; (3) the error must affect substantial rights and result in prejudice to the defendant; and (4) we must correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. When reviewing possible error in a jury instruction, we examine the instructions in light of the record evidence as a whole and determine if any error would result in a miscarriage of justice. Moreover, we review the instructions in their entirety. If the charge as a whole is not misleading, there is no plain error. This is a very high bar—we find plain error only in rare and extraordinary cases.

State v. Vuley, 2013 VT 9, ¶ 43, 193 Vt. 622, 70 A.3d 940 (quotation omitted).

¶ 16.   We find no plain error here. The jury instructions appropriately reflected the evidence and the parties' positions at trial, and indeed, they explicitly allowed the jury to assess the reasonableness of defendant's actions in response to the actions of the repossession employees. This is not one of those "rare and extraordinary cases" where plain error exists. Id.

## I. Self-Defense and Defense of Others

¶ 17.   To establish defendant's guilt of aggravated assault with a deadly weapon, the State needed to show that defendant was "armed with a deadly weapon and threaten[ed] to use

7

the deadly weapon on another person," 13 V.S.A. § 1024(a)(5), and that he "subjectively intend[ed] to threaten another person with a deadly weapon," State v. Bourn, 2012 VT 71, ¶ 17, 192 Vt. 270, 58 A.3d 236. By statute, no crime is committed if someone threatens to use a deadly weapon "[i]n the just and necessary defense" of his life or the life of other relatives, including a brother. Id. § 1024(d)(1). This statutory provision does not preclude a defendant from raising "defenses granted at common law." Id. § 1024(e).

¶ 18. The common law defenses available to defendant are similar to those set forth by statute though slightly more expansive.[3] As to self-defense, it is established that "[o]ne who is not the aggressor in an encounter is justified in using a reasonable amount of force against his adversary when he reasonably believes (a) that he is in immediate danger of unlawful bodily harm from his adversary and (b) that the use of such force is necessary to avoid this danger." 2 W. LaFave, Substantive Criminal Law, § 10.4, at 142 (2d ed. 2003) (emphasis added) (noting that "[i]t is never reasonable to use deadly force against [an adversary's] nondeadly attack"); see also Jacobs v. State, 363 A.2d 257, 259 (Md. Ct. Spec. App. 1976) ("It is unquestioned that one is privileged to use force, even deadly force, in self-defense if legitimately and reasonably in fear of suffering death or serious bodily harm.").

¶ 19. Defense of others is "essentially an extension of the self-defense instruction, in that the actor may do in another's defense anything the person himself may have lawfully done in the circumstances." State v. Bolden, 371 S.W.3d 802, 805 (Mo. 2012) (en banc). Thus, "[t]he prevailing rule is that one is justified in using reasonable force in defense of another person, even a stranger, when he reasonably believes that the other is in immediate danger of unlawful bodily

---

[3] We assume arguendo that the common law defenses of self-defense and defense-of-others are available with respect to defendant's disorderly conduct charge where he was charged with "recklessly" creating a risk of public inconvenience or annoyance by engaging in fighting or in violent, tumultuous, or threatening behavior in violation of 13 V.S.A. § 1026(a)(1). Cf. 2 W. LaFave, Substantive Criminal Law § 10.4, at 143 n.2 (2d ed. 2003) (citing cases reaching conflicting conclusions on whether self-defense is available where defendant is charged with recklessly causing harm).

harm from his adversary and that the use of such force is necessary to avoid this danger." 2 LaFave, supra § 10.5(b), at 161 (emphasis added). As with self-defense, even if the actor "entertains these reasonable beliefs, he may not use more force than he reasonably believes necessary to relieve the risk of harm." Id. § 10.5(b), at 161-62. See State v. Hoadley, 147 Vt. 49, 54, 512 A.2d 879, 881 (1986) (stating that essential requirements of defense-of-others are that: (1) reasonable person in defendant's position would believe his intervention necessary for defense of third person, and (2) in such circumstances as that reasonable person would take them to be, third person would have right to use such force to protect himself).

¶ 20. The evidence here did not support an instruction on self-defense or defense-of-others, either as provided by statute for purposes of the aggravated assault charge or under the common law, and the court did not commit plain error by failing to sua sponte instruct the jury on these defenses. State v. Knapp, 147 Vt. 56, 59, 509 A.2d 1010, 1011 (1986) (stating that "[t]o be entitled to an instruction" on these affirmative defenses, "the defendant must establish a prima facie case on each of the elements of the defense asserted"). First, defendant steadfastly denied pointing his gun and threatening to shoot the men, in self-defense, in defense of Peter, or otherwise. He did not admit the elements of the charged crimes, but instead claimed innocence. See State v. Martin, 2016-Ohio-225, ¶ 27, __ N.E.3d __ ("Self-defense is a 'confession and avoidance' affirmative defense in which appellant admits the elements of the crime but seeks to prove some additional element that absolves him of guilt.").[4]

---

[4] The situation here is not like State v. Bolaski, 2014 VT 36, 196 Vt. 277, 95 A.3d 460, cited by defendant. The defendant there admitted shooting the victim, but argued that he had acted in self-defense. The jury was instructed on second-degree murder and the lesser included offenses of voluntary and involuntary manslaughter. The defendant argued on appeal that, although he did not request it, there were sufficient facts to merit an instruction on passion or provocation for the second-degree murder charge, i.e., the instructions should have included a statement that to find defendant guilty of second-degree murder, it must find that he did not act under the influence of passion or provocation. We concluded that the evidence supported a passion or provocation instruction, the instructions were faulty, and that there was a possibility that the jury had been misled. Id. ¶ 33. In reaching our conclusion, we noted that provocation and self-defense are closely related and both frequently share the common element of fear. Id. ¶ 28. Thus, if a defendant claimed self-defense and testified that he acted out of fear, a jury

¶ 21.   As the trial court observed, moreover, the failure to request these instructions was likely a trial strategy on counsel's part.  See, e.g., Thompson v. State, 445 S.W.3d 408, 412 (Tex. App. 2013) (holding that counsel was not ineffective for failing to request defense-of-property instruction in aggravated assault case where defendant pointed gun at individual trying to repossess truck; trial court reasonably could have concluded that counsel made strategic decision not to raise such defense because evidence at trial did not support it and because counsel reasonably chose to employ available strategy, namely that defendant was innocent of alleged crime and never brandished firearm at all); Posey v. State, 966 S.W.2d 57, 63 (Tex. Crim. App. 1998) (stating that question of which defensive issues to request are strategic decisions generally left to lawyer and client, and lawyer and client may decide not to request defensive issue and risk losing credibility with jury because evidence raising defense is so unworthy of belief); see also Grindstaff v. State, 165 P.2d 846, 852 (Okla. Crim. Ct. App. 1946) (stating that when defendant, who has right of election as to several defenses, and makes such admissions as to render every theory of defense unavailable save one, he will be deemed to have elected that one).  There are compelling policy reasons for not requiring the court to sua sponte instruct the jury on defenses absent a request for such instruction.  See Posey, 966 S.W.2d at 63 (stating that such practice could impose on defendants unwanted defensive issues in the charge and might encourage defendant to retry case on appeal under new defensive theory effectively giving him two bites at apple).  This case was tried on a strategy that defendant did not point the gun at the repossession employees, not that he pointed it at them because it was necessary for him to do so.  The court is not required to instruct jurors on theories of defense that the defendant has not pursued.  See Grindstaff, 165 P.2d at 852 ("The trial court is not required to delve in the realms of conjecture

---

verdict rejecting self-defense but finding the defendant guilty of voluntary manslaughter was reasonable and sustainable.  Id.  Unlike the instant case, the defendant in Bolaski admitted engaging in the charged conduct; he did not deny the shooting and at the same time argue that he was entitled to a self-defense instruction.

10

or speculation in order to instruct upon some chimerical theory of the law of the case not reasonably supported by the evidence.").

¶ 22. In any event, putting aside that defendant denied the charged acts, the evidence does not support an argument that defendant committed the acts because he reasonably believed that he and Peter were in <u>immediate</u> danger of <u>unlawful bodily harm</u> from the employees. The evidence similarly does not support a finding that defendant reasonably believed that the use of a firearm coupled with a threat to shoot the employees was necessary to avoid such danger. Defendant testified that, from inside his home, he heard a verbal confrontation, and looking out the window, he saw both employees advancing toward Peter. Peter testified, by contrast, that he interacted only with one employee. Nonetheless, both defendant and Peter testified that the employees were at least twenty feet away when defendant exited the home brandishing a shotgun and stood next to Peter. Peter was "calm," and defendant knew that the employees were not armed. While defendant and Peter claimed to be confronted by a spew of billingsgate, there was no "imminent" physical attack to be defended against and "mere words do not justify an assault and battery." <u>State v. Bogie</u>, 125 Vt. 414, 416, 217 A.2d 51, 54 (1966). Even if defendant had testified that he was scared, moreover, which he did not do, "fear unrelated to actual or threatened force is not sufficient to show a well-founded fear of impending death or serious bodily harm." <u>Knapp</u>, 147 Vt. at 59, 509 A.2d at 1011-1012. Given the state of the evidence, the court did not commit plain error in failing to sua sponte instruct the jury on self-defense and defense-of-others. There plainly is no evidence, moreover, to suggest that defendant pointed his gun and threatened to shoot the men "in the just and necessary defense" of either his life or Peter's life as set forth by statute.

## II. Defense of Property

¶ 23. The court similarly did not commit plain error with respect to a defense-of-property instruction. First, defendant did not argue that he committed the crimes in defense of his property; he claimed to be innocent. Moreover, as set forth below, defendant's use of a gun

to ward off what was, at best, a mere trespass to his driveway was inherently unreasonable. In any event, the trial court did allow the jury to consider the reasonableness of defendant's actions in response to the actions of the employees, and the jury concluded that his actions were not reasonable. There is no plain error.

¶ 24. A jury instruction on defense-of-property considers if a person was on the premises legally; whether the defendant asked the person to leave the premises and gave him sufficient time to do so; and if so, whether the defendant used any more force than was reasonably necessary to eject the person from the premises. Bogie, 125 Vt. at 417, 217 A.2d at 54; see Raynes v. Rogers, 2008 VT 52, ¶ 12, 183 Vt. 513, 955 A.2d 1135 (stating that "the common-law defense of property reinforced the importance of citizens' private property rights by exempting property owners from liability for protecting their property against the criminal or tortious invasion of others" (emphasis added)); see also 2 LaFave, supra § 10.6(a), at 165-67 (stating that person is justified in using reasonable force to protect his property from trespass when he reasonably believes property is in immediate danger of such unlawful interference and that use of such force is necessary to avoid that danger, and explaining, as relevant here, that deadly force "is never reasonable except where the unlawful interference with property is accompanied by a threat of deadly force (in which case it is proper to use deadly force in self-defense)").

¶ 25. Even assuming arguendo that the employees were "trespassing," and even if they "breached the peace" for purposes of the UCC, the court's instructions were not plain error.[5] Defendant did not act reasonably in defense of his property both as a matter of law, and as a matter of fact, as determined by the jury. See State v. Patch, 145 Vt. 344, 350, 488 A.2d 755, 760 (1985) (recognizing "that the use of force to terminate an intrusion upon one's own property,

---

[5] Given this, we need not address defendant's assertion that "under well-established common-law tort principles, unaffected by statute, the [employees'] entry was a trespass." But see generally Restatement (Second) of Torts § 183(1), (2) (1965). For the same reason, we need not address whether the court admitted the repossession order in error.

or that of a third person, especially where a peaceful legal recourse is available, should be limited to those instances where an immediate termination is necessary to avoid or minimize foreseeable or ongoing damage); see also 2 LaFave, supra § 10.6(a), at 166 ("It is not reasonable to use any force at all if the threatened danger to property can be avoided by a request to the other to desist from interfering with the property.").

¶ 26. Numerous courts have considered analogous situations and reiterated the basic principle that a landowner is not justified in using a deadly weapon to confront a mere trespasser.[6] In Commonwealth v. Alexander, 531 S.E.2d 567 (Va. 2000), for example, the defendant was convicted of brandishing a firearm after pointing a rifle at a man trying to repossess a car from his driveway. The defendant sought an instruction at trial that he must be acquitted if he brandished the rifle in reasonable defense of his property. The trial court denied his request, and the Virginia Supreme Court found no error. In reaching its conclusion, the court found it unnecessary to resolve the defendant's claim that the employee's actions were "unwarranted and illegal in attempting by other than peaceful means to unlawfully take defendant's personal property." Id. at 568 (internal alterations omitted). Even if this were so, the court explained, the defendant did not have the right to assert or defend his possessory rights to personal property by the use of deadly force. Id.

¶ 27. As the court explained,

> The law is clearly stated by a learned judge in State v. Morgan, [25 N.C. 186] 3 Ired. 186, 38 Am. Dec. 714, as follows: "When it is said that a man may rightfully use as much force as is necessary for the protection of his person and property, it should be recollected that this rule is subject to this most important modification, that he shall not, except in extreme cases, endanger human life or do great bodily harm. It is not every right of person, and still less of property, that can lawfully be asserted, or every wrong that may rightfully be redressed by extreme remedies. There is a recklessness—a wanton disregard of humanity and social duty in taking or endeavoring to take, the life of a fellow-

---

[6] We are not here concerned with invasions of an individual's home, trespass with intent to commit a felony, or situations where a trespasser threatens a landowner with serious bodily harm or death.

being, in order to save one's self from a comparatively slight wrong, which is essentially wicked, and the law abhors. You may not kill, because you cannot otherwise effect your object, although the object sought to be effected is right. You can only kill to save life or limb, or prevent a great crime, or to accomplish a necessary public duty." See, also, 1 Bishop on New C. L., secs. 839, 841, 850.

Id.

¶ 28. The court rejected the argument that these principles did not apply "when there is a mere threat to use deadly force in protection of personal property." Id. As it stated, "The threat to use deadly force by brandishing a deadly weapon has long been considered an assault. . . . Such a threat may give the threatened person a right to defend himself by the use of a deadly weapon. . . . [P]ermitting one to threaten to use deadly force leads in dangerous progression to an unacceptable conclusion." Id. at 568-69 (concluding that "the owner of land has no right to assault a mere trespasser with a deadly weapon" (quotations omitted)). See also People v. Doud, 193 N.W. 884, 887 (Mich. 1923) ("No man may, in defense of his mere land against trespassers, assault the invaders with a dangerous weapon. The law forbids such a menacing of human life for so trivial a cause."); Grindstaff, 165 P.2d at 851 ("A landowner is not justified in making an assault upon another with a dangerous or deadly weapon in resisting a trespass on his premises, when no felony is attempted."); Scheufele v. Newman, 210 P.2d 573, 575 (Or. 1949) (landowner and son confronted fisherman with guns, asserting that he was trespassing; court concluded that even if fisherman was trespasser, "[i]t does not follow . . . that the defendant would be justified in using unreasonable force to compel [him] to 'get off' the land merely because he was a trespasser," and "use of a deadly weapon under such circumstances would be wholly unjustified").

¶ 29. The Doud court reiterated the same basic principles as the Virginia Supreme Court:

A man has the legal right to protect his property against trespass, opposing force to force. If, therefore, the offer had simply been to commit a common assault, as by declaring he would strike with his

14

hand, or with some implement or weapon not dangerous, [the defendant] would have been guilty of no offense. If a man takes my hat, or offers to do so against my will, and I, drawing back my hand, declare that I will strike if he does not forebear, I only meet the trespass by an offer to use such force as may be appropriate and necessary. But I cannot at once commit an assault with deadly weapons, and a threat to kill. If I were to kill under such circumstances, the killing would be murder; and hence I have made an assault which, if carried into a battery with fatal results, would constitute the gravest crime. As no trespass upon property will primarily justify the taking of life, so an offer to commit a trespass cannot justify an assault with a deadly weapon, accompanied by a threat to kill unless the party desists. The means adopted are disproportioned to and not sanctioned by the end sought.

193 N.W. at 887 (quotation omitted).

¶ 30. Numerous other courts echo these sentiments. See, e.g., Newcome v. Russell, 117 S.W. 305, 306 (Ky. 1909) ("A mere trespass upon lands of another, even after the trespasser has been warned to depart and has refused, does not justify the landowner using a dangerous or deadly weapon to resist the trespass . . . . The law regards human life too highly to permit it to be imperiled in attempting to prevent so slight a trespass as [tearing down a neighbor's fence for the purpose of letting his cattle through]." (quotation omitted)); State v. Ludt, 2009-Ohio-416, ¶ 24, 906 N.E.2d 1182 ("While a person has a right to protect his property from a trespass, and, after warning or notice to the trespasser, use such force as is reasonably necessary so to do, he cannot unlawfully use fire arms to expel the intruder where he has no reasonable ground to fear the trespasser will do him great bodily harm. Once again, if a person brandishes a deadly weapon to expel trespassers, then the defense-of-property argument would necessarily need to include proof of his fear of death or great bodily harm, rather than simple fear of any bodily harm." (quotation omitted)); Allison v. Fiscus, 100 N.E.2d 237, 244 (Ohio 1951) (Taft, J., dissenting) ("It is generally held that the use, in the protection of property, of a weapon likely to cause death or great bodily harm is, except in extreme cases, the use of more than justifiable force, and will render the owner of the property liable, both civilly and criminally, for the assault." ); Montgomery v. Commonwealth, 36 S.E. 371, 373 (Va. 1900) ("For a mere trespass

15

upon land, the owner has no right to assault the trespasser with a deadly weapon, the result of which may be to kill him or do him great bodily harm.").

¶ 31. Defendant cites the Restatement (Second) of Torts § 80 (1965), and suggests that he had the right to put the employees "in apprehension of a harmful or offensive contact for the purpose of preventing or terminating" their trespass. Defendant omits key language from the Restatement. Consistent with the basic principles enunciated above, the Restatement provides that an

> actor is privileged intentionally to confine another or to put him in apprehension of a harmful or offensive contact for the purpose of preventing or terminating the other's intrusion upon the actor's possession of land or chattels under the same conditions as create a privilege to inflict a harmful or offensive contact or other bodily harm upon the other for the same purpose.

Id. (emphasis added). The Restatement makes clear that "[u]nder the rule stated in this Section the actor is privileged to employ a means threatening death or serious bodily harm only under conditions which, as stated in § 79, create a privilege to inflict a bodily contact threatening death or serious bodily harm."[7] Id. cmt. b. Under § 79, the use of such force is privileged only "if the actor reasonably believes that the intruder, unless expelled or excluded, is likely to cause death or serious bodily harm to the actor or to a third person whom the actor is privileged to protect." There is no evidence to support such finding here.

¶ 32. In light of this well-established law, the court did not commit plain error in its instructions with respect to defense-of-property. No instruction was warranted on this point given the evidence. To the extent that the evidence here presented a jury question about the reasonableness of defendant's actions, despite the well-established law discussed above, the jury

---

[7] Defendant cites to a provision of the Restatement that addresses the "Defense of Possession by Force Not Threatening Death or Serious Bodily Harm." See Restatement (Second) of Torts § 77. This is not the appropriate provision. Defendant is apparently arguing on appeal that he committed the charged acts—pointing a gun at and threatening to shoot two people—and that his behavior was justified by his right to defend his property. The appropriate provision, as referenced above, is § 79 of the Restatement, which addresses "Defense of Possession by Force Threatening Death or Serious Bodily Harm." Restatement (Second) of Torts § 79.

was asked to consider the elements of a defense-of-property defense, including whether the employees acted within the scope of their privilege in attempting to repossess the car, and if not, whether defendant acted reasonably and used a reasonable amount of force so that he should be excused from criminal liability. The jury concluded that defendant had criminal responsibility for his actions. While defendant tries to employ a different defense strategy and relitigate this case on appeal, he fails to demonstrate any plain error in the instructions given based upon the evidence presented.

Affirmed.

FOR THE COURT:

_____
Associate Justice

17