# State of Vermont v. Joseph Perrillo

[649 A.2d 1031]

No. 92-202

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 23, 1994

*Kevin R. Klamm*, Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Morse, J.** Defendant appeals his conviction for two counts of lewd and lascivious conduct with a child, 13 V.S.A. § 2602 (maximum penalty five years). Defendant claims that the evidence supported a

conviction on no more than one count. He claims the sentence of five to ten years (2½ to 5 years consecutive on each count) doubled the allowable penalty intended by the legislature for the crime. He further asserts that the trial court erred in (1) admitting evidence of sexual misconduct with another child, (2) instructing the jury to ignore part of defendant's explanation for leaving Vermont during his pretrial release, and (3) admitting hearsay to buttress the credibility of the victim. We reverse and remand for a new trial.

## I.

At the time of the incident, the victim, a 12-year-old girl, and her friend were spending the night on the living room floor at the residence of the friend's mother. Defendant was staying overnight on the couch in the same room. The victim testified that defendant

> picked me up and brought me onto the couch, and molested me. . . . [F]irst he rubbed my stomach, and then he went up and around my chest area, and then he went down my pants, . . . [a]nd then he took his hand out of my pants and then he just touched me outside of my pants. [He touched me underneath my pants] [i]n my vaginal area.

According to the victim, the incident lasted "about a few minutes or so."

██ ██ Count one charged defendant with violation of 13 V.S.A. § 2602 by placing his hand inside the victim's pants and rubbing his hand on her vulva. Count two charged a violation of the same statute by putting his hand inside the victim's shirt and rubbing her chest. Before trial defendant moved to dismiss the second count of lewd and lascivious conduct. He claimed that the evidence viewed in a light most favorable to the State did not support two crimes. The trial court denied the motion.

The allowable number of counts under a criminal statute is determined by legislative intent. Section 2602 prohibits:

> [A]ny lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of such person or of such child . . . .

Because a single episode of sexual misconduct ordinarily involves the wrongdoer touching the victim more than once, *Harrell v. State*, 277 N.W.2d 462, 473 (Wis. Ct. App. 1979) (an episode of sexually assaultive

behavior usually involves multiple invasions of the intimate parts of the victim's body), we do not think the legislature intended to increase the potential sentence for these crimes exponentially depending on the number of touches involved in a single episode of sexual abuse.

Sexual abuse as forbidden by § 2602 is an aggravated form of battery with heightened penalties due to sexual contact with a child. In battery cases, multiple blows during one fight or attack usually constitute only a single offense. See *People v. Berner*, 600 P.2d 112, 113 (Colo. Ct. App. 1979) (two blows struck in attack were not separate events but were part of single criminal episode resulting from single impulse); see also *People v. Wilson*, 417 N.E.2d 146, 147 (Ill. App. Ct. 1981) (finding "inane" the argument that each blow constituted a separate crime).

Under the State's view, however, the only limit to the number of counts in a case like this is the amount of detail the victim remembers. If we approve the multiple charging in this case, it is readily apparent that the distinction between the potential for enough and too much punishment under the statute is impossible to reasonably define. The better approach, consistent with legislative intent, is to view the episode as the offense. The facts here support conviction for only one crime.

## II.

■ The trial court allowed, over defendant's objection, introduction of evidence of an allegation of defendant's touching another minor one month prior to the charged act. At trial, the witness testified that defendant had rubbed his hand "around [her] chest and . . . on [her] back" at night while she was asleep in the same bed as defendant, who had been spending the night at the child's mother's home. The trial court ruled the evidence relevant to show a common scheme or plan. See *State v. Winter*, 162 Vt. 388, 392, 648 A.2d 624, 626 (1994) (evidence of bad act must be relevant to a "legitimate issue" other than defendant's propensity to commit the crime charged); V.R.E. 404(b) (evidence of other acts not admissible to prove character of person to show that he acted in conformity therewith).

We have recently written at length on the use of uncharged sexual misconduct. See *State v. Winter*, 162 Vt. at 391-95, 648 A.2d at 626–28. The conduct here does not remotely approach our test for admissibility. Nor is this evidence admissible for other reasons contemplated by Rule 404(b): the act charged is not part of a continuous series of sexual acts with one victim, *State v. Forbes*, 161

Vt. 327, 331, 640 A.2d 13, 16 (1993) (evidence of incest admissible to supply context for charged act), or so distinctive and unique as to constitute the defendant's "signature." *State v. Bruyette*, 158 Vt. 21, 27–30, 604 A.2d 1270, 1272–74 (1992) (prior idiosyncratic sexual activity constituted "signature" admissible to show identity). The court erred in admitting this evidence. We cannot say the error was harmless.

## III.

The State sought to raise an inference of defendant's consciousness of guilt by presenting evidence to the jury that defendant fled to Arkansas after being charged. Defendant's lawyer, a public defender, had been notified of a trial date but was unable to contact defendant, who failed to appear for trial. Defendant was arrested in Arkansas and brought back to Vermont. Defendant explained his absence by testifying that, because his public defender was overworked and too busy, he left Vermont to earn money to hire a lawyer, not to escape. Defendant also testified that before leaving the state he had been offered a plea agreement in which he would not serve any jail time, but he turned it down because he wanted his innocence established. The State argued the trip to Arkansas indicated a guilty mind. Defendant argued he had no reason to escape given the fact that the State, as demonstrated by its plea bargaining posture, was not seeking to put him in jail.

After final argument, the court sua sponte instructed the jury:

> You've also heard testimony—testimony about a plea offer, a plea offer presented to the defendant. You are advised that no such offer is meaningful unless and until it is approved by the Court. Accordingly, such testimony is not relevant to any issue submitted to you for your consideration.

Defendant objected to this instruction.

The admission of flight evidence itself is problematic, although there is a lengthy history allowing the admission of this evidence to show consciousness of guilt. See, e.g., *Allen v. United States*, 164 U.S. 492, 499 (1896) ("[T]he law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt."). There is, however, a long history of questioning the probative value of "flight" evidence, which is often equivocal. See, e.g., *Alberty v. United States*, 162 U.S. 499, 511 (1896) ("[I]t is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being

apprehended as the guilty parties, or from an unwillingness to appear as witnesses."); see also *Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963) ("[W]e have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime.").

The probative value of evidence of flight as circumstantial evidence of guilt depends upon the confidence placed on four inferential steps: "from the defendant's behavior to flight[,] . . . from flight to consciousness of guilt[,] . . . from consciousness of guilt to consciousness of guilt concerning the crime charged[,] . . . from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977). Common experience does not necessarily support the second and fourth inferences, making evidence of flight or related conduct "'only marginally probative as to the ultimate issue of guilt or innocence.'" *Id.* (quoting *United States v. Robinson*, 475 F.2d 376, 384 (D.C. Cir. 1973)). In this case, the first inference—defendant's trip indicated flight—was refuted by defendant with evidence showing that his departure was for reasons consistent with his innocence. Defendant's evidence was critical because his explanation refuted consciousness of guilt through all the inferential steps.

When the prosecution presents evidence of flight for the jury to infer consciousness of guilt, the defendant should in fairness be afforded the opportunity to explain why his absence was consistent with his innocence. See 1 Torcia, Wharton's Criminal Evidence § 214 (13th ed. 1972). Although the court's instruction may have been a "correct" statement of law governing the binding effect of a plea, V.R.Cr.P. 11(e)(2) (plea agreement not binding upon court unless court accepts plea agreement), the binding effect of a plea was not at issue. The proposed plea agreement was relevant evidence offered to refute the inference that defendant's flight was motivated by consciousness of guilt. The court's gratuitous instruction denied defendant that opportunity, and may have given the impression that only the State's argument was believable. Therefore, the instruction should not have been given.

We need not reach defendant's additional argument that the court erroneously failed to instruct the jury that it must find guilt beyond a reasonable doubt upon consideration of all the evidence, and not simply on consideration of flight evidence. Defendant did not object to the omission. V.R.Cr.P. 52(b); *State v. Gilman*, 145 Vt. 84, 88, 483 A.2d 598, 600 (1984) (failure to raise error below precludes appellate review unless error is plain).

## IV.

■ The court allowed a witness to testify that shortly after the event the victim told her that defendant had "molested her." Defendant argues that the court erred when it allowed the other child's hearsay testimony to buttress the victim's testimony. The testimony was not error because it was introduced to rebut defendant's claim that the victim failed to report the incident to anyone else for three months and recently fabricated her story. V.R.E. 801(d)(1)(B).

*Reversed and remanded.*