NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 22

No. 2017-362

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Criminal Division |
| | |
| Michael Abel | September Term, 2018 |

Howard E. Van Benthuysen, J.

James Pepper, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.     **CARROLL, J.**  Defendant appeals from his conviction of two counts of domestic assault following a jury trial. He argues that both convictions arise from the same assaultive incident in violation of the Double Jeopardy Clause of the U.S. Constitution. Defendant also asserts that the court committed plain error in its jury instructions. We affirm.

¶ 2.     Defendant was charged with numerous crimes in October 2015 based on allegations that he harmed and threatened to harm the complainant—his cohabitating partner—and the parties' three children, then ages one, three, and five.[1] The charges at issue allege separately that defendant struck the complainant in the ribs and hit her in the arm.

---

[1] Two charges were dismissed at arraignment for lack of probable cause. The jury acquitted defendant of other charges and we do not recount the testimony related to these charges.

¶ 3.    The complainant testified to the following at trial. She met defendant online when she was thirteen and defendant was eighteen. She later moved to Vermont to live with defendant. Defendant began physically abusing her in 2012 after the parties' second child was born. He continued to physically and verbally abuse her thereafter. In April 2015, defendant held the complainant down on the floor and repeatedly punched her in the head, resulting in a concussion and bruised ribs. Defendant also threatened the complainant's life in front of the children.

¶ 4.    On the day in question, the complainant was preparing the children for school. One child made a loud noise. Defendant became upset; he picked the child up and slammed her down. The complainant told defendant to "chill out." Defendant then "lost it," instructing the complainant not to tell him what to do in front of the children. He shoved the complainant while she was standing in the kitchen holding the parties' youngest child, causing the complainant and the child to fall. Defendant told the older children to go to their rooms, which they did. The complainant then moved a highchair from the kitchen into a bedroom and put the youngest child in it. After this, defendant hit the complainant and put his hands around her neck. Defendant then called the school and informed them that the children would be absent.

¶ 5.    Upon further questioning by the State, the complainant clarified that after defendant shoved her to the ground, he called the school. When asked where on her body defendant hit her, the complainant replied "[m]y arm and my side mostly." She testified that he struck her four or five times in the arm or the side or on her body. While striking her, defendant yelled that she was an awful person and that "he was in charge of the kids." The complainant stated that it hurt when defendant hit her. When the State asked the complainant if defendant hit her in the ribs before or after the children went to their rooms, the complainant testified that "[s]ome was before" and "[s]ome was after." She testified that defendant put his hands around her neck after she put the children in their rooms.

2

¶ 6. Defendant did not present any evidence. He moved for a judgment of acquittal under Vermont Rule of Criminal Procedure 29 at the close of the evidence, asserting in relevant part that the two domestic assault charges were "one continuous action" and thus, that there should be only one charge. Defendant maintained that there was no evidence to show any break in time between the charged acts of striking the complainant in the ribs and arm. The State responded that this argument could be addressed after the case went to the jury.

¶ 7. The court denied defendant's motion as to the counts at issue here, although it reduced the aggravated domestic assault charge for allegedly striking the complainant in the ribs to a misdemeanor charge of domestic assault.[2] The court also proposed a special verdict sheet to avoid confusion. The special verdict sheet asked the jury to determine—if it found defendant guilty of both domestic assault charges—if there was "one continuous assault or two separate assaults, separated by time." Neither party objected to this instruction. The jury found defendant guilty of both domestic assault charges and it found that "two separate assaults, separated by time" occurred. Defendant renewed his Rule 29 motion, which the court denied. This appeal followed.

¶ 8. On appeal, defendant reiterates his argument that the domestic assault charges were part of a single, continuous assault and that his two convictions therefore violate the Double Jeopardy Clause. He asserts that there was no "break in the action" sufficient to allow him to form a new intent to assault the complainant. In support of this argument, defendant points to the complainant's testimony and the State's acknowledgement, in its discussion with the trial court, that the counts might be the same. Defendant asserts that he was prejudiced by the court's decision to allow both counts to go to the jury.

¶ 9. We review the trial court's denial of a motion for a judgment of acquittal to determine if "the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the

---

[2] The court dismissed one count pursuant to defendant's motion.

3

defendant is guilty beyond a reasonable doubt." State v. Delisle, 162 Vt. 293, 307, 648 A.2d 632, 641 (1994) (quotation and alterations omitted). We review legal questions de novo. State v. Neisner, 2010 VT 112, ¶ 11, 189 Vt. 160, 16 A.3d 597. As set forth below, we conclude that there was no Double Jeopardy violation here. A reasonable jury could find, based on the evidence, that defendant committed two separate acts of domestic assault.

¶ 10. As we have explained, "[t]he Double Jeopardy Clause safeguards a criminal defendant from facing multiple punishments for the same offense." Id.; see also U.S. Const. amend. V (providing that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb"). Among other things, the Double Jeopardy Clause prohibits the State from "dividing a single criminal act into multiple counts of the same offense." Spencer v. State, 868 A.2d 821, 822 (Del. 2005). This is "commonly referred to as the 'multiplicity doctrine.' " Id. at 823.

¶ 11. "There is no bright-line rule" for determining multiplicity-doctrine violations. Id. Instead, courts must engage in a "fact-intensive" inquiry to determine if a "defendant's actions are sufficiently separate in time and location to constitute distinct acts." Id. In conducting this analysis, we have looked to:

> the elapsed time between successive parts of the defendant's conduct; whether the defendant's conduct occurred in more than one geographic location; whether an intervening event occurred between successive parts of the defendant's conduct; [and] whether there was sufficient time for reflection between assaultive acts for the defendant to again commit himself.

State v. Fuller, 168 Vt. 396, 400, 721 A.2d 475, 479 (1998). "The critical inquiry is whether the temporal and spatial separation between the acts supports a factual finding that the defendant formed a separate intent to commit each criminal act." Spencer, 868 A.2d at 823; see also Fuller, 168 Vt. at 400, 721 A.2d at 479 (considering, as most important question, whether defendant "had sufficient time between the commission of the two acts to reflect upon what he was doing and to recommit himself").

4

¶ 12.   In Fuller, we considered a defendant's argument that he had engaged in one continuous sexual assault rather than two separate sexual acts.  The defendant there forced his stepson to drink alcohol, followed the child into a bedroom, and began masturbating in front of him.  The child tried to escape but the defendant grabbed him, pulled down the boy's pants, and placed his mouth on the child's penis for five to ten seconds.  The child eventually escaped and ran into the living room.  The defendant followed him, threw the child onto a couch, and again placed his mouth on the child's penis for approximately one minute.

¶ 13.   Applying the factors cited above, we concluded that two sexual assaults occurred. Fuller, 168 Vt. at 400, 721 A.2d at 480.  We reasoned that while the "defendant's conduct in the bedroom and the living room was close in time," there was "an intervening event between the two acts," namely, the child's "escape from [the] defendant and his flight from the bedroom into the living room."  Id. at 400, 721 A.2d at 479.  As noted above, we found it most significant that the "defendant had sufficient time between the commission of the two acts to reflect upon what he was doing and to recommit himself to sexually assaulting the child [who] had escaped."  Id.

¶ 14.   In reaching our conclusion, we distinguished State v. Perrillo, 162 Vt. 566, 649 A.2d 1031 (1994).  In Perrillo, the defendant carried his victim to a couch where, over the course of several minutes, he touched her chest and genitals.  Id. at 567, 649 A.2d at 1032.  The defendant was charged with two counts of lewd or lascivious conduct with a child, one for rubbing the child's genitals and the second for rubbing her chest.  We reversed and remanded for a new trial, concluding that the evidence supported only one charge.  We reasoned that because "a single episode of sexual misconduct ordinarily involves the wrongdoer touching the victim more than once," the legislature did not intend "to increase the potential sentence for these crimes exponentially depending on the number of touches involved in a single episode of sexual abuse." Id. at 567-68, 649 A.2d at 1032.  We observed that the charge at issue was an "aggravated form of

5

battery," and noted that "[i]n battery cases, multiple blows during one fight or attack usually constitute only a single offense." Id. at 568, 649 A.2d at 1032.

¶ 15.    The Fuller Court distinguished Perrillo because the defendant's actions in that case "happened close in time, they were uninterrupted and occurred in the same geographic location, and there was no evidence suggesting any time between touches for [the defendant] to reflect on his conduct and recommit himself to abusing the victim, thereby making it more likely that his actions constituted one continuous lewd act." Fuller, 168 Vt. at 401, 721 A.2d at 480.

¶ 16.    Considering the evidence in the instant case in the light most favorable to the State, we conclude that the alleged acts could be charged as separate and distinct offenses. While the alleged acts happened close in time and in the same geographic location, they were interrupted. The complainant left the kitchen, took a highchair to a bedroom, and then placed a child in the highchair. During this time, defendant called the school. This interval provided defendant sufficient time to "reflect on his conduct and recommit himself to abusing the victim." Id.; see also State v. Garnett, 298 S.W.3d 919, 923 (Mo. Ct. App. 2009) (recognizing that "[i]n assault cases, separate offenses can arise from a single set of facts each time the defendant forms an intent to attack the victim," and "[t]hus, when a defendant has time to reconsider his actions, each assault separated by time constitutes a separate offense" (quotation omitted)). The complainant did not testify, as defendant suggests, that the hitting occurred "throughout." She stated that "[s]ome was before" the children were sent to their rooms and the complainant left the kitchen and "[s]ome was after." This break provided defendant "time to pause, reflect, and form a new criminal intent between the occurrences." State v. Carrolton, 2011 VT 131, ¶ 13, 191 Vt. 68, 39 A.3d 705 (quotation omitted); see also Missouri v. Burns, 478 S.W.3d 520 (Mo. Ct. App. 2015) (concluding that, although occurring close in time, defendant's acts of choking victim and pulling her hair were separate acts of domestic assault because "there was a break in the action" and defendant "had

6

time to reconsider his actions in between the two acts"). The State did not concede, as defendant suggests, that there was only one assault at issue here.

¶ 17. It is elemental that "a defendant is not immune from multiple punishments or trials simply because there is only one victim of the defendant's assaultive conduct." State v. Kleckner, 867 N.W.2d 273, 281 (Neb. 2015), overruled on other grounds by State v. Thalken, 911 N.W.2d 562 (Neb. 2018). As set forth above, the key question is whether there was "a break in the action long enough to infer that the defendant stopped, reconsidered his or her actions, and then launched another assault." Id. Based on the evidence presented in this case, the court could properly send both counts to the jury, and the jury could reasonably find, as it did, that there were "two separate assaults, separated by time" and not "one continuous assault."

¶ 18. Finally, defendant argues that the court committed plain error in instructing the jury on the domestic-assault counts. According to defendant, there was no evidentiary support for two misdemeanor convictions and the court misstated the law by failing to set forth the law of Fuller in its special jury verdict form. We have rejected defendant's evidentiary argument above. We similarly reject his plain-error argument as to the special verdict form.

¶ 19. As we have explained,

> Four factors guide our plain error analysis: (1) there must be an error; (2) the error must be obvious; (3) the error must affect substantial rights and result in prejudice to the defendant; and (4) we must correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. When reviewing possible error in a jury instruction, we examine the instructions in light of the record evidence as a whole and determine if any error would result in a miscarriage of justice. Moreover, we review the instructions in their entirety. If the charge as a whole is not misleading, there is no plain error. This is a very high bar—we find plain error only in rare and extraordinary cases.

State v. Herrick, 2011 VT 94, ¶ 18, 190 Vt. 292, 30 A.3d 1285 (citations omitted). This is not one of those "rare and extraordinary cases" where plain error exists. Id.

¶ 20.    The instructions, viewed in their entirety, were not misleading.  The court properly instructed the jury as to the elements of each domestic-assault count.  To convict defendant on the first count, the jury was required to find that defendant intentionally caused the complainant bodily injury by repeatedly striking her in the ribs.  To convict on the second count, the jury had to find that defendant intentionally caused the complainant bodily injury by striking her arm.  The jury found, as a matter of fact, that defendant possessed the requisite criminal intent as to each charge and that he committed the acts in question.

¶ 21.    The special verdict form was drafted to respond to the concern that defendant expressed at trial.  Defendant argued that there was one continuous assault because the evidence showed no "break in time" between the charged acts.  He asserted that he could strike the complainant in the arm and rib at the same time and he maintained that this is what the evidence showed.  The State took the position that this issue could be decided after the case went to the jury and that the jury was entitled to consider both charges because "there were several different conducts that qualified under different offenses."  The court asked if the parties wanted a special interrogatory to ask the jury if it found that "X, Y, and Z conduct happened," and the parties could then "have a legal argument about the effect of the conduct."  Defendant stated that he did not want such an instruction.  Ultimately, and without objection, the jury was asked to decide—if it found defendant guilty of the two domestic-assault charges—whether "they constituted one continuous assault or two separate assaults, separated by time."

¶ 22.    Defendant argues that the special jury verdict sheet should have "set forth the law of Fuller," presumably meaning that the court should have asked the jury to make findings as to the factors discussed above.  Citing State v. Rounds, 2011 VT 39, ¶ 32, 2189 Vt. 447, 2 A.3d 477, defendant argues that the instruction "did not express the law" and it therefore follows that he was harmed.  This is not the standard set forth in Rounds.  See id. ¶ 22 (concluding that "as charged, the jury instruction misstated the law and in so doing permitted the jury to infer an element of the

8

crime based on a lower standard than the statute demands" (emphasis added)). Beyond a generalized assertion, defendant does not explain how the failure to include all of the Fuller factors in the special jury verdict form affected his substantial rights and resulted in prejudice to him.

¶ 23. In any event, the special verdict form, while not setting forth all of the Fuller factors, encompassed a key component of several different factors, namely whether time elapsed between successive parts of defendant's conduct, and implicitly, given the testimony in this case, whether an intervening event occurred between successive parts of the defendant's conduct. As noted above, the complainant testified that she left the kitchen at one point and she stated that some of the hitting occurred before she left the kitchen and "[s]ome was after." The jury rejected the notion that this was a "continuous" assault, i.e., one "marked by uninterrupted extension in space, time, or sequence." Continuous, Merriam-Webster Online Dictionary, Merriam-Webster.com [https://perma.cc/BHY5-UD9L]. Instead, it found a separation of time between the charged acts. In light of the instructions as a whole, and given that the jury explicitly considered the temporal question, we find no plain error.

Affirmed.

FOR THE COURT:

_____
Associate Justice

9