NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 80

No. 2018-197

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Onix Fonseca-Cintron | March Term, 2019 |

Michael R. Kainen, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier, for
  Defendant-Appellant.


PRESENT:  Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.    **REIBER, C.J.**  Defendant appeals his three domestic assault convictions.  He argues that the trial court erred in failing to provide the jury with a self-defense instruction.  He also argues that that the underlying conduct supports only one criminal offense, not three.  We affirm.

## I.  Facts

¶ 2.    Defendant and complainant began a sexual relationship in 2011.  Complainant was married and her husband lived overseas.  In 2015, complainant's husband moved to the United States to live with her and she ended her relationship with defendant.  Soon afterward, complainant visited defendant at his home, where they had a series of disagreements that led to the charges

against defendant. Their accounts of what happened that day diverged at trial. We recount complainant's testimony first and defendant's testimony second.

¶ 3. According to complainant, defendant initially accepted the end of their relationship but later became very upset. Complainant went to defendant's house at his request and they argued. She left but came back when urged by defendant. They ate dinner and then had sex. But soon defendant began insulting her and pushed her as she was about to leave. Complainant pushed him back. The two argued and she left.

¶ 4. Complainant returned almost immediately to look for a missing ring. Defendant closed the door behind her and locked it. Complainant put down her phone and keys on the kitchen counter and started searching for the ring. Soon she noticed that defendant had taken her keys and demanded them back. Defendant grabbed complainant by the hair and dragged her around the house while hitting her. She felt her hair ripping. Defendant grabbed at complainant's earrings and other jewelry. Complainant bit defendant and tried to fight him off. He dragged her into the bedroom and choked her. She stopped fighting. Defendant started punching complainant's face; she fought him again, broke free, and ran to the living room. Defendant followed and began hitting complainant with a sheathed machete, saying he was going to kill her. Then defendant stopped and returned complainant's keys. Complainant saw there was a "black thing on his eyes," but she did not know what it was. She left and reported the incident to the police.

¶ 5. Defendant disputed most of complainant's testimony. According to him, after they had dinner and sex, he told complainant to leave but she became angry and "jumped over [him] like an animal." Defendant video recorded part of this encounter, which was played for the jury. Defendant further testified that when complainant returned to search for her ring, she began insulting him and making a mess. Defendant followed complainant into the bedroom and told her to stop, after which she became upset and hit him. He pushed her away, told her to stop again, and went into the bathroom. When he came out, she came out of the bedroom with his bag of jewelry

2

in hand.  Defendant followed complainant to the kitchen, telling her to give him the bag.  She took a broom from the closet and hit him in the face with it.  Then she dropped the broom and left.  Defendant went looking for towels to dry the blood on his face.  Defendant denied punching the complainant, pulling out her hair, or hitting her with the machete.  He testified as follows:

> [Defense attorney]: When [the complainant] was punching you and kicking you, like you said, what did you do?
>
> [Defendant]:  I was just trying to push her back, taking her away from me.
>
> . . . .
>
> [Defense attorney]: Did you ever on that day . . . punch [the complainant]?
>
> [Defendant]:  No; the only thing that I was trying was to take her away from me.
>
> [Defense attorney]:  Did you ever pull her hair out?
>
> [Defendant]:  I never pulled her hair . . . .
>
> . . . .
>
> [Defense attorney]:  And at any time during that day, on any occasion, did you take the machete and hit her with any part of it?
>
> [Defendant]:  No.

Additionally, the defense attorney asked: "So just so we're clear, when [the complainant] said you choked her, strangled her in the bedroom, in the back bedroom, did you agree with that?  Did that happen?"  Defendant answered, "No."

¶ 6.    The State charged defendant with three counts of domestic assault: (1) first-degree aggravated domestic assault, 13 V.S.A. § 1043(a)(1), based on defendant's attempt to strangle complainant; (2) first-degree aggravated domestic assault with a weapon, id. § 1043(a)(2), based on defendant's hitting the complainant with a sheathed machete and threatening to kill her; and (3) domestic assault, id. § 1042, based on defendant's dragging complainant by the hair.  The jury found defendant guilty on all three counts.  Defendant timely appealed.

3

## II. Self-Defense Instruction

¶ 7.     We first address defendant's argument that the trial court erred in failing to provide a self-defense instruction. At trial, defendant requested an instruction on self-defense, which the court denied, reasoning that the evidence did not warrant the instruction. Defendant contends this was error because the evidence for self-defense was "overwhelming" and "the trial court is obligated to instruct on all relevant issues that the evidence could reasonably support."

### A. Evidence at Trial

¶ 8.     In addition to the evidence above, the following was admitted at trial: a police officer's testimony that complainant appeared injured when she reported the assault; photographs of bruising on her body taken at that time; and photographs of complainant's ear and head taken one week before trial. Complainant testified that defendant ripped her ear, requiring surgery, and her hair did not grow back after the assault. Defendant offered no competing evidence.

¶ 9.     The State also admitted photographs of defendant and his home. These included photographs of cuts and bruising on defendant's body taken two days after the incident and photographs of defendant's belongings with blood on them, taken the day after the assault; defendant testified this was his blood. A police officer who responded to a 911 call made during their first argument testified he observed defendant had "old bruising" on his leg and some scratches on his shoulder prior to the later altercation. Another officer who saw defendant two days later testified that he looked like he "had been involved in quite a donnybrook or a fight." Defendant testified that the complainant had caused his injuries. A recording of the 911 call was also admitted.

### B. Analysis

¶ 10.     A trial court must provide the jury with an instruction on an affirmative defense when the evidence supports that defense. State v. Nunez, 162 Vt. 615, 617, 647 A.2d 1007, 1009 (1994) (mem.) ("A court's obligation to charge on a defendant's theory is limited to situations in

4

which there is evidence supporting the theory."); State v. Drown, 148 Vt. 311, 312, 532 A.2d 575, 576 (1987) (per curiam) ("A defendant is entitled to have the court present a defense based on the evidence to the jury squarely, that they might confront it, consider it, and resolve its truth or falsity by their verdict." (quotation omitted)). The evidence must be sufficient to "establish a prima facie case for each element of the defense asserted." State v. Albarelli, 2016 VT 119, ¶ 13, 203 Vt. 551, 159 A.3d 627. It is the defendant's burden to establish a prima facie case for self-defense. Id. ("Once a defendant has satisfied the initial burden of production for the defense, the burden then shifts to the State to disprove self-defense beyond a reasonable doubt." (quotation omitted)); see also State v. Baker, 154 Vt. 411, 414, 579 A.2d 479, 480 (1990) (noting that "defendant carries the burden of production . . . and must establish a prima facie case on each of the elements of the affirmative defense"). However, we may consider the evidence as a whole, including the State's evidence, in deciding whether an instruction is warranted. Drown, 148 Vt. at 313, 532 A.2d at 577 (relying on State's evidence in holding that "defense theory had sufficient support to be presented to the jury").

¶ 11.    The legal theory of self-defense provides that a defendant is "justified in using a reasonable amount of force" if the defendant "is not the aggressor in [the] encounter" and "reasonably believes (a) that [the defendant] is in immediate danger of unlawful bodily harm from [the] adversary and (b) that the use of such force is necessary to avoid this danger." State v. Buckley, 2016 VT 59, ¶ 18, 202 Vt. 371, 149 A.3d 928 (quotation and emphasis omitted); see also Albarelli, 2016 VT 119, ¶ 13 (holding that self-defense requires proof that defendant "had an honest belief that [defendant] faced imminent peril of bodily harm" and that belief was "grounded in reason"). Thus, defendant was not entitled to a self-defense instruction unless he established at trial that he was not the aggressor; he used reasonable force against the complainant; he did so based on his honest belief that doing so was necessary to protect himself from immediate bodily harm; and his belief was reasonable.

¶ 12.     The evidence does not meet this standard. According to defendant's account at trial, he did not use force at all, apart from pushing complainant in response to her attack. While he did not deny the sequence of encounters, he wholly denied strangling, hitting, or pulling complainant's hair. See Buckley, 2016 VT 59, ¶ 20 (holding, among other reasons, that trial court did not commit plain error in failing to provide self-defense instruction because defendant "did not admit the elements of the charged crimes, but instead claimed innocence"). And the State's evidence provides no help to him. Cf. Drown, 148 Vt. at 313, 532 A.2d at 577 (holding State's evidence supported affirmative defense).

¶ 13.     Moreover, aside from the question of whether reasonable force was used, there is no evidence to show that defendant believed himself in "immediate danger of unlawful bodily harm." Buckley, 2016 VT 59, ¶ 18 (emphasis omitted). There is no evidence at all, from either defendant or the State, about defendant's subjective belief. Defendant argues that we do not need such evidence because any reasonable person in defendant's situation would have believed himself to be in danger; he claims that we review defendant's belief under an objective standard only. This is incorrect. Self-defense requires that defendant subjectively believed he was in imminent danger. Certainly, that belief must be reasonable—but first there must be a subjective belief. "A self-defense instruction is warranted only if a defendant can show that (1) he had an honest belief that he faced imminent peril of bodily harm and that (2) the belief was grounded in reason." Albarelli, 2016 VT 119, ¶ 13 (emphasis added). No such evidence exists here.[1]

¶ 14.     Defendant points to State v. Shaw to support his claim that self-defense does not require proof of his subjective belief. 168 Vt. 412, 721 A.2d 486 (1998), overruled on other grounds by State v. Congress, 2014 VT 129, 198 Vt. 241, 114 A.3d 128. Defendant misreads

_____

[1] We do not mean to suggest that a defendant's subjective belief may be established only by a defendant's direct testimony. We do not rule out the possibility that circumstantial evidence or observations of other witnesses may establish that a defendant had the requisite fear of imminent physical harm. But we conclude that the record in this case is insufficient to support such an inference.

Shaw. This Court held in Shaw that a defendant's subjective belief alone is insufficient and that a defendant must also prove that the subjective belief is objectively reasonable. Id. at 413-14, 418, 721 A.2d at 489, 491-92. We did not hold that self-defense lacks a subjective-belief component. See id.; see also Albarelli, 2016 VT 119, ¶ 13 (citing Shaw for support that defendant must show "honest belief" that is "grounded in reason").

¶ 15. Defendant presumes that our holding here requires a defendant "admit to all the essential elements of the charged offense before the affirmative defense becomes available," which contradicts the "fundamental principle" of the criminal justice system that the State bears the burden to prove guilt beyond a reasonable doubt. We disagree. Certainly, "[t]he due process clause of the Fourteenth Amendment to the United States Constitution mandates that a defendant may be convicted only if the State proves beyond a reasonable doubt every fact necessary to constitute the crime with which he is charged." Baker, 154 Vt. at 414, 579 A.2d at 480 (quotation omitted). But due process does not remove a defendant's burden to establish the elements of an affirmative defense. Id. (holding that defendant bears burden of production for affirmative defenses and may bear burden of persuasion for some defenses without offending due process). Nor must a defendant's burden to establish a defense necessarily preclude inconsistent defenses, including innocence and an affirmative defense. See Mathews v. United States, 485 U.S. 58, 63-64 (1988) (concluding that defendant, who had admitted underlying action of crime but denied intent element of offense, could both claim innocence and assert entrapment defense, and remanding matter to court of appeals to determine whether evidence was sufficient to warrant entrapment defense).

¶ 16. In sum, defendant failed to establish that he used reasonable force and that he subjectively believed his actions were necessary to protect himself from harm. We conclude that the trial court did not err in declining to provide the jury a self-defense instruction because the evidence did not establish the prima facie elements of that defense.

7

### III. Double Jeopardy

¶ 17.    We next address defendant's claim that his assaultive actions support only one criminal offense, not three.  We review for plain error because defendant did not raise this issue below.  State v. Yoh, 2006 VT 49A, ¶ 39, 180 Vt. 317, 910 A.2d 853 (considering issues not raised below for plain error).  "Plain-error review is very limited.  Plain error will be found only in rare and extraordinary cases where the error is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice."  State v. Lumumba, 2018 VT 40, ¶ 16, 207 Vt. 254, 187 A.3d 353 (quotation omitted); see also Buckley, 2016 VT 59, ¶ 15 (explaining that under plain-error review, there must be error that is obvious, "affect[s] substantial rights and result[s] in prejudice to the defendant," and "seriously affects the fairness, integrity, or public reputation of judicial proceedings" (quotation omitted)).

¶ 18.    The legal question here is whether defendant's convictions result in more than one punishment for the same offense and thus violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.  U.S. Const. amend. V ("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); State v. Neisner, 2010 VT 112, ¶ 11, 189 Vt. 160, 16 A.3d 597 (stating that Fifth Amendment of United States Constitution applies to states through Fourteenth Amendment's Due Process Clause and summarizing that "Double Jeopardy Clause safeguards a criminal defendant from facing multiple punishments for the same offense").

### A.  Legal Frameworks

¶ 19.    Defendant and the State assert different frameworks for resolving this issue.  According to defendant, the alleged assaults comprise one continuous act, and therefore they support only one conviction.  We have previously held that "the Double Jeopardy Clause prohibits the State from dividing a single criminal act into multiple counts of the same offense."  State v. Abel, 2019 VT 22, ¶ 10, __ Vt. __, __ A.3d __ (quotation omitted).  In keeping with that principle,

we have stated that "multiple blows during one fight or attack usually constitute only a single offense [of battery]." State v. Perrillo, 162 Vt. 566, 568, 649 A.2d 1031, 1032 (1994); see also State v. Carrolton, 2011 VT 131, ¶ 15, 191 Vt. 68, 39 A.3d 705 (affirming Perrillo's rule in context of sexual abuse). In determining whether the underlying conduct constituted one continuous action or multiple actions, we rely on the factors set forth in State v. Fuller, such as "the elapsed time between successive parts of the defendant's conduct" and "whether the defendant's conduct occurred in more than one geographic location." 168 Vt. 396, 400, 721 A.2d 475, 479 (1998). "The critical inquiry is whether the temporal and spatial separation between the acts supports a factual finding that the defendant formed a separate intent to commit each criminal act." Abel, 2019 VT 22, ¶ 11 (quotation omitted). According to defendant, the evidence at trial failed to show a sufficient separation between the assaultive actions. Rather, the actions constituted one continuous, uninterrupted assault, and therefore they support only one conviction.

¶ 20. The State contends that defendant's analysis does not apply to this case, and we agree. The Fuller analysis explained above addresses the constitutional prohibition against multiple convictions of the same offense based on one act. Id. ¶ 10. But there is no such prohibition against multiple convictions of different offenses based on one act. State v. Grega, 168 Vt. 363, 382, 721 A.2d 445, 458-59 (1998). This is because the Double Jeopardy Clause "serves principally as a restraint on courts and prosecutors," not on legislatures. Brown v. Ohio, 432 U.S. 161, 165 (1977); see also Neisner, 2010 VT 112, ¶ 11 (citing and affirming reasoning of Brown). "The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments . . . ." Brown, 432 U.S. at 165. The Double Jeopardy Clause then restricts courts and prosecutors by requiring them to operate within the bounds set by the Legislature: "[O]nce the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." Id.

9

¶ 21.    Thus, when determining whether multiple convictions based on one act violate the Double Jeopardy Clause, our "central inquiry" is "one of legislative intent, not constitutional prohibition." Neisner, 2010 VT 112, ¶ 12 (quotation omitted).  We must discern "whether the legislature intended to punish two separate offenses or one."  Id. (quotation omitted).  If there is "a clear indication that the Legislature meant to impose multiple punishments for the same conduct under different statutes," then we rely on that clear expression of intent.  Id.  When the Legislature's intent is not clear, we apply the rule of statutory construction articulated by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 304 (1932).  Grega, 168 Vt. at 382, 721 A.2d at 458-59.  Under that rule, "two offenses are considered the same offense for double jeopardy purposes unless 'each provision requires proof of a fact the other does not.' " State v. Ritter, 167 Vt. 632, 632-33, 714 A.2d 624, 625 (1998) (mem.) (quoting Blockburger, 284 U.S. at 304)).  As explained below, we conclude that the Blockburger analysis decides the issue here, and we need not reach a Fuller analysis.

### B.  Blockburger Analysis

¶ 22.    Here the State charged defendant as follows.  Count One required proof that defendant "attempt[ed] to cause . . . serious bodily injury to a family or household member," 13 V.S.A. § 1043(a)(1), by choking the complainant.  Count Two required proof that defendant was "armed with a deadly weapon and threaten[ed] to use the deadly weapon on a family or household member," id. § 1043(a)(2), by hitting the complainant with a sheathed machete while threatening to kill her.  Count Three required proof that defendant "recklessly caus[ed] bodily injury to a family or household member," id. § 1042, by dragging the complainant by the hair.

¶ 23.    In applying the Blockburger analysis, "our focus is not on the evidence offered at trial but on the elements of the crimes as they were charged."  Neisner, 2010 VT 112, ¶ 12; see also Grega, 168 Vt. at 384, 721 A.2d at 459 ("The Blockburger test focuses on the statutory elements of the offenses; the evidence and proof offered at trial are immaterial to the analysis.").

10

Comparing the elements as charged, each count required proof of a fact that the others did not. Count One, and only Count One, required proof of intent to cause serious bodily injury.[2] Count Two, and only Count Two, required proof of use of a deadly weapon. Count Three, and only Count Three, required proof of bodily injury. Thus, all three charges were proper, and the three resulting convictions do not violate the Double Jeopardy Clause. This is so even if the acts were part of the same course of conduct, and we therefore need not reach a Fuller analysis. As there was no double jeopardy violation, there was no error, and thus no plain error. Buckley, 2016 VT 59, ¶ 15 (requiring that to find plain error, Court must find, among other things, that there was error).

¶ 24. The dissent argues that the Legislature could not have intended domestic assault to constitute a distinct offense from first-degree aggravated domestic assault because, under a different presentation of facts, defendant could have requested a lesser-included-offense jury instruction and been convicted of two counts of domestic assault pursuant to § 1042. See post, ¶ 38. We agree that the Blockburger test is only a tool of statutory construction, and, as always, our primary aim in construing a statute is to discern the intent of the Legislature. Neisner, 2010 VT 112, ¶ 12 ("The central inquiry when addressing a double jeopardy claim is one of legislative intent, not constitutional prohibition, and this Court's task becomes predominantly one of statutory construction." (quotation omitted)); Hill v. Conway, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983) ("Underlying all other rules of [statutory] construction is the fundamental rule that we must ascertain and give effect to the true intent of the legislature, for it is that intent which constitutes

---

[2] Count One required proof of an "attempt," which requires proof of an intent to commit the crime. State v. Synnott, 2005 VT 19, ¶ 22, 178 Vt. 66, 872 A.2d 874. Count Three required proof of a lesser mental state, "recklessly," which we have defined as to "consciously disregard[] a substantial and unjustifiable risk." State v. Brooks, 163 Vt. 245, 251, 658 A.2d 22, 26, (1995) (quotation and emphasis omitted) (defining "recklessly"); see also State v. Trombley, 174 Vt. 459, 461 n.3, 807 A.2d 400, 404 n.3 (2002) (mem.) (explaining "to consciously disregard risk" is lesser mental state than "conscious intent" (quotation omitted)).

the law." (citation omitted)). As such, the <u>Blockburger</u> analysis creates only a "rebuttable presumption of legislative intent." <u>State v. Brooks</u>, 868 A.2d 778, 786-87 (Conn. App. Ct. 2005 (quotation omitted)); see also <u>State v. Breed</u>, 2015 VT 43, ¶ 17, 198 Vt. 574, 117 A.3d 829 (explaining that unless two offenses are same offense under <u>Blockburger</u>, "we must presume that the Legislature did not intend to authorize the imposition of cumulative punishments for the two offenses"); <u>Ritter</u>, 167 Vt. at 633, 714 A.2d at 625 (explaining when two offenses are same offense under <u>Blockburger</u>, "the Legislature is presumed to have authorized cumulative punishment under the two statutory" provisions). This presumption "may be overcome . . . by a clear indication of contrary legislative intent." <u>Grega</u>, 168 Vt. at 385, 721 A.2d at 460 (quotation omitted).

¶ 25.    The possibility that domestic assault could be a lesser-included offense of first-degree aggravated domestic assault as charged in a particular case does not create "a clear indication of contrary legislative intent." <u>Id</u>. (quotation omitted). "An offense is lesser to a greater offense only if it has no elements that are not necessary to conviction for the greater offense." <u>State v. Russo</u>, 2004 VT 103, ¶ 17, 177 Vt. 394, 864 A.2d 655. In this case, domestic assault had one element of proof that was not necessary to conviction for first-degree aggravated domestic assault. Therefore, domestic assault was not a lesser-included offense to first-degree aggravated domestic assault in this case.

¶ 26.    Moreover, even if defendant could have requested a lesser-included-offense instruction, he could not have received—and our reasoning does not suggest that he could have received—two convictions of domestic assault based on the same criminal act. Domestic assault under § 1042 is clearly one offense, and a defendant cannot receive multiple punishments for violating one offense based on the same criminal act. <u>Abel</u>, 2019 VT 22, ¶ 10. Nothing in our opinion suggests otherwise. Accord <u>State v. Carlos P</u>., 157 A.3d 723, 732, 734 (Conn. App. Ct. 2017) (holding attempted sexual assault in first degree was same offense as sexual assault in first degree); <u>Brooks</u>, 868 A.2d at 786 (holding attempted assault in first degree different offense under

12

Blockburger analysis from assault in second degree because former offense requires proof of intent and latter requires proof of injury). There is therefore no incongruous result requiring us to deviate from the presumption created by the Blockburger analysis.

Affirmed.

FOR THE COURT:

_____

Chief Justice

¶ 27. **ROBINSON, J. concurring and dissenting.** The implication of the majority's analysis is that if someone punches a family member with the intent to cause seriously bodily injury, but the blow misses the mark and the injury does not rise to the level of "serious bodily injury," the puncher can be charged, convicted and sentenced for two distinct crimes: the attempt to cause serious bodily injury, and the action of causing actual bodily injury. If, on the other hand, the puncher succeeded in inflicting serious bodily injury with that blow, they could only be charged with, convicted of, and sentenced for a single act. That makes no sense. Unless the underlying acts are legally distinct, the charges of attempting to cause serious bodily injury to a household member in violation of 13 V.S.A. § 1043(a)(1) (Count 1) and recklessly causing bodily injury to a family or household member in violation of 13 V.S.A. § 1042 (Count 3), are duplicative and both convictions cannot stand.[3]

¶ 28. Bear in mind that the majority relies solely on a Blockburger analysis. That is, the majority assumes for purposes of its analysis that the various actions supporting the respective charges—whether attempted strangling, punching, or pulling of hair—amounted to a single act.

---

[3] I agree that the charge of using, attempting to use, or threatening to use a deadly weapon on a family or household member in violation of 13 V.S.A. § 1042(a)(2) is predicated on conduct—wielding the machete—that is distinct from that underlying the other charges. For this reason, and because I concur in the majority's analysis of defendant's challenge to the jury instructions, I concur in the judgment affirming defendant's conviction on Count 2.

13

Even given that assumption, the majority concludes that because the state charged <u>attempt</u> with respect to the more serious first-degree aggravated domestic assault, and <u>actual injury</u> with respect to the less serious domestic assault charge, it charged two distinct crimes.

¶ 29. The majority reaches this conclusion by applying at the most granular level our prior instruction that the focus of the <u>Blockburger</u> analysis is on the elements of the crimes "as they were charged." <u>Ante</u>, ¶ 23 (quoting <u>State v. Neisner</u>, 2010 VT 112, ¶ 12, 189 Vt. 160, 16 A.3d 597). Without considering whether 13 V.S.A. § 1042 is a lesser-included offense of first-degree aggravated domestic assault under 13 V.S.A. § 1043(a)(1) with respect to attempted or actual infliction of bodily injury, it concludes that each count required proof of an element not required in the other count: the mental state of <u>intent</u> to cause serious bodily injury was required to prove an attempt for purposes of the first-degree aggravated domestic assault count, 13 V.S.A. § 1043(a)(1), but was not necessary to prove domestic assault as charged pursuant to 13 V.S.A. § 1042. Proof of <u>actual</u> bodily injury was required for the domestic assault charge (as charged) but was not necessary to prove the aggravated domestic assault charge based upon attempt. I believe the majority's approach in this case loses sight of the larger purpose of the <u>Blockburger</u> test, rests on a misapplication of the principle that the <u>Blockburger</u> analysis focuses on the crimes as they were charged, fails to take into account the structure of the statutes governing violence toward family and household members, and leads to results I do not believe the Legislature intended.

¶ 30. The <u>Blockburger</u> test is a tool for discerning the Legislature's intent, and is not an end in itself. As this Court explained in <u>State v. Grega</u>:

> When a defendant is tried in a single trial for two statutory offenses that criminalize the same conduct, whether or not a conviction and sentence may be had under each statute is a question of legislative intent, not constitutional prohibition. The Legislature is free to impose multiple punishments, but its intent to do so must be clear. When it is not, the United States Supreme Court has applied a rule of statutory construction, first enunciated in <u>Blockburger v. United</u>

14

States, to divine whether the legislature intended to punish two separate offenses or one.

168 Vt. 363, 382, 721 A.2d 445, 458-459 (1998) (citations omitted). The Blockburger test is not a hard and fast rule that trumps the Legislature's actual intentions. See Albernaz v. U.S., 450 U.S. 333, 340 (1981) ("[B]ecause it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent."); see also Grega, 168 Vt. at 385, 721 A.2d at 460 (noting that the Blockburger presumption may be overcome by a clear indication of contrary legislative intent). The underlying goal in a case like this is to ensure that the total punishment for a defendant's conduct "not exceed that authorized by the legislature." State v. Gagne, 2016 VT 68, ¶ 43, 202 Vt. 255, 148 A.3d 986 (quotation omitted).

¶ 31.   Given the purpose of the Blockburger test, this Court has declined to allow dual convictions for two charges that technically satisfy the Blockburger test when it is clear that the Legislature could not have intended the dual convictions. See, e.g., State v. Ritter, 167 Vt. 632, 714 A.2d 624 (1998) (mem.). In Ritter, the trial court entered judgments of conviction on two counts of second-degree aggravated domestic assault for a single act of domestic assault—one based on the fact that defendant committed a domestic assault in violation of a court order for conditional release, thereby supporting a conviction for second-degree aggravated domestic assault under 13 V.S.A. § 1044(a)(1), and one based on the fact that he had a prior conviction for domestic assault, supporting a conviction under § 1044(a)(2). The Court concluded that even though each charge required an element that the other did not, the Blockburger presumption was overcome because "construing the subsections of § 1044(a) as defining separate offenses would lead to absurd results that could not have been intended by the Legislature." Ritter, 167 Vt. at 633, A.2d at 625-26. The Court concluded that defendant's unitary act of domestic assault could support a conviction of second-degree aggravated domestic assault based on the presence of one aggravating factor, but could not support a second charge of second-degree aggravated domestic assault based

15

on the presence of a second such factor. Id. The Legislature's intent, as discerned based on a review of the structure and language of the statutes under which the defendant was charged, was the Court's guiding star, notwithstanding the application of the Blockburger test. Likewise, the central issue here is whether the Legislature intended to allow punishment under § 1042 and 1043(a)(1) for a single act.

¶ 32. In this case, I believe the majority has misapplied our guidance that in conducting a Blockburger analysis a court should consider the crimes as actually charged. See Neisner, 2010 VT 112, ¶ 12 ("In undertaking this test, our focus is not on the evidence offered at trial but on the elements of the crimes as they were charged."). In Neisner, this Court concluded that the State could not charge the defendant with giving false information to a police officer and hindering an officer where the claimed hindering act was the giving of false information. Id. ¶ 16. The Court acknowledged that, at first blush, each of the two crimes involved an element that the other does not. Id. ¶ 14. But a closer examination of the charging documents persuaded the Court that because the State relied on the giving of false information as an essential component of the hindering charge, the false-information charge was a lesser-included offense in that case, as charged. Id. Similarly, in Grega, the Court concluded that aggravated sexual assault was a lesser-included offense to the aggravated murder charge where the alleged aggravating factor in connection with the murder charge was the fact that the murder was committed while the defendant was committing a sexual assault. 168 Vt. at 383-88, 721 A.2d at 459-62. The Court noted that if the State had charged the case differently—relying on a factor other than the sexual assault to support the aggravated murder charge—the defendant could have been convicted of both aggravated sexual assault and aggravated murder. Id. at 385 n.3, 721 A.2d at 460 n.3.

¶ 33. In cases where the statutes on their face do not appear to relate as greater- and lesser-included, but the charges themselves create the necessary link, it is particularly important to look at the actual charges to ensure that a defendant is not improperly penalized two times for an

16

act that the Legislature did not intend to punish twice. That is the context and purpose of the analyze-as-charged principle. The "as charged" principle does not allow the State to seek cumulative punishment for the same act through creative charging strategies. Here, in each statute, the Legislature has included several alternative ways of establishing the essential elements of the defined crime—proof of an attempted act, a willful act, or a reckless act—with each alternative sufficient to satisfy the same element of the statute. It does not make sense to treat these alternatives as isolated and distinct "elements" of distinct charges in order to justify two charges for one act. See Ritter, 167 Vt. at 634, 714 A.2d at 626 ("[13 V.S.A.] § 1044(a)(1) and (2) define alternative ways of committing second-degree aggravated domestic assault, rather than creating two separate offenses"). In short, Neisner does not relieve the Court of the critical task of considering the statutes themselves to discern whether one is a lesser included offense relative to the other.

¶ 34. Given these considerations, it is important to understand the structure of the domestic assault statutes. The domestic assault statute applies when an individual "attempts to cause or willfully or recklessly causes bodily injury to a family or household member or willfully causes a family or household member to fear imminent serious bodily injury." 13 V.S.A. § 1042 (emphasis added). Violation of the statute can lead to imprisonment for not more than eighteen months and/or a fine of not more than $5,000. Id. With respect to bodily injury, this statute, and the associated penalties, apply whether or not the individual's acts are willful or reckless, and whether or not the individual succeeded in causing bodily injury or merely attempted to do so.

¶ 35. The second-degree aggravated domestic assault statute enhances the sentence for a conviction of domestic assault if the domestic assault violates any of several types of court orders, or if the individual has a prior conviction for domestic assault or violating an abuse prevention order. Id. § 1044. The enhanced penalties apply without regard to the severity of the underlying

17

domestic assault or the mental state with which it was committed. The statute provides enhanced penalties of up to five years' imprisonment, a $10,000 fine, or both. Id. § 1044(b).

¶ 36. As the title of the statute suggests, the first-degree aggravated domestic assault statute, § 1043, applies to more severe acts of domestic assault and those enhanced by a prior conviction. In particular, § 1043 applies when a perpetrator "attempts to cause or willfully or recklessly causes serious bodily injury to a family or household member," id. § 1043(a)(1), "uses, attempts to use, or is armed with a deadly weapon and threatens to use the deadly weapon on a family or household member," id. § 1043(a)(2), or "commits the crime of domestic assault and has been previously convicted of aggravated domestic assault," id. 1043(a)(3). With respect to the "bodily injury" prong, the statute and associated penalties apply whether the individual's acts were willful or reckless, and whether the individual succeeded in causing bodily injury or merely attempted to do so. The only distinction between the bodily injury prong of the first-degree aggravated domestic assault statute and the bodily injury prong of the ordinary domestic assault statute is that the former requires proof of "serious bodily injury," defined as a bodily injury that creates a substantial risk of death, a substantial loss or impairment of the function of any bodily member or organ, a substantial impairment of health, substantial disfigurement, or strangulation. Id. § 1021(a)(2). The penalty for first-degree aggravated domestic assault is not more than fifteen years' imprisonment and/or a fine up to $25,000. Id. § 1043(b).

¶ 37. It seems clear to me that the domestic assault statutes as a whole are designed to do two things: enhance the penalties for domestic assault in certain cases where prior conduct warrants such enhancements, see 13 V.S.A. §§ 1043(a)(3), 1044, and provide more severe penalties for acts of domestic assault that are more dangerous. Given that § 1043(a)(1) addresses exactly the same conduct as § 1042, except that it applies to more serious injuries, and given that § 1043(a)(1) imposes significantly greater penalties than § 1042, it seems clear to me that the distinct statutes were not enacted to address distinct criminal acts with respect to bodily injury of a family or

household member, but were enacted to provide proportionate penalties relative to the severity of a given act. In short, § 1042 is a lesser-included offense to aggravated domestic assault under § 1043(a)(1), at least as those two statutes address the infliction of bodily injury. See State v. Bolio, 159 Vt. 250, 252, 617 A.2d 885, 886 ("An offense is a lesser-included offense of another if it is composed of some, but not all, elements of the greater offense and does not have any element not included in the greater offense." (quotation and alteration omitted)). I see nothing in the statute that persuades me that the Legislature intended to authorize two sentences for a single act of violence.

¶ 38. The majority's conclusion to the contrary would lead to illogical results that I don't believe the Legislature intended. As noted above, an individual who attempts to inflict serious bodily injury and actually inflicts less-than-serious bodily injury would be subject to a longer period of incarceration (sixteen-and-a-half years) than an individual who intentionally and successfully inflicts serious bodily injury (fifteen years). Under the same scheme, a person who ultimately inflicts serious bodily injury, but only intended to inflict ordinary bodily injury, would be subject to a higher penalty than a person who intended to inflict serious bodily injury in the first place. I think the majority would agree that the State cannot punish an individual who commits a single act for two counts of domestic assault under § 1042—one for attempting to inflict bodily injury and one for actually doing so. And I expect the majority would acknowledge that the State cannot convict an individual who commits a single act of two counts of first-degree aggravated domestic assault under § 1043(a)(1)—one for attempting to cause serious bodily injury and one for successfully doing so. But the majority's reasoning does allow two charges if the intent and the consequences of the single act do not match up as stated in the charging document.

¶ 39. The incongruity of the majority's reasoning is especially apparent when considering the fact that the parties can request a lesser-included-offense instruction. See State v. Bean, 2016 VT 73, ¶¶ 14-15, 202 Vt. 361, 149 A.3d 487. If defendant in this case had argued that

19

he never intended to inflict <u>serious</u> bodily injury in connection with the conduct charged in Count 1, he would be entitled upon request to an instruction on the lesser-included offense of attempted domestic assault. See <u>State v. Alexander</u>, 173 Vt. 376, 382, 795 A.2d 1248, 1253 ("[A]s a general rule, a criminal defendant is entitled to have the jury instructed on all lesser-included offenses if the facts in evidence reasonably support such an instruction." (quotation and alteration omitted)). That would bring the double jeopardy problem into even sharper focus: based on a single act, defendant could be convicted of two distinct counts of domestic assault under § 1042—one for the attempt and one for the actual infliction of bodily injury. The Legislature clearly would not have intended to allow multiple punishments under the same statute for a single act.

¶ 40. For the above reasons, I part ways with the majority's analysis and dissent as to Counts 1 and 3. I would remand the remaining two counts for the State to choose which charge to dismiss. See <u>State v. Dow</u>, 2016 VT 91, ¶ 29, 202 Vt. 616, 152 A.3d 437.[4]

¶ 41. I am authorized to state that Justice Skoglund joins this concurrence and dissent.

_____
Associate Justice

---

[4] Implicit in my decision to dissent rather than concur is my conclusion that the acts underlying the respective convictions—attempting to strangle complainant (Count 1) and dragging her by the hair (Count 3)—were part of a continuous assault considering the factors set forth in <u>State v. Fuller</u>, 168 Vt. 396, 400, 721 A.2d 475, 479 (1998) (identifying elapsed time between successive parts of defendant's conduct and whether the conduct occurred in more than one geographic location as factors bearing on whether the conduct constituted one continuous action or multiple actions). I do not elaborate on that conclusion in this dissent.